414 A.2d 118

**RINGGOLD AREA SCHOOL DISTRICT, Appellee,**

v.

**RINGGOLD EDUCATION ASSOCIATION, PSEA/NEA, Appellant.**

Supreme Court of Pennsylvania.

Argued March 11, 1980.

Decided May 2, 1980.

Ronald N. Watzman, Daniel Delaney, Pittsburgh, for appellant.

George B. Stegenga, Washington, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

A collective bargaining agreement was entered into between the Ringgold Area School District (District) and the Ringgold Education Association, PSEA/NEA (Association) which became effective on July 1, 1973. Until September of 1973, the District followed a practice of granting a leave of absence to teachers for attending Association conferences and meetings. The leave was without salary and the District employed a substitute teacher for the days involved. In September of 1973 the District, through its acting superintendent, and the Association entered into and implemented an oral modification of this practice. It was agreed that no deductions would be taken from the salary of the teacher granted leave for attending the Association conferences, but that the Association would reimburse the District for the wages paid to the substitute teacher replacing the teacher on leave. This arrangement remained in effect during the school year 1973–1974, and in 1974 the District, unilaterally, modified the agreed arrangement, returning to the prior practice.

When a teacher suffered a deduction from her pay as a result of her attending an Association conference, a grievance was filed, alleging the deduction was contrary to an established practice of the parties. The grievance was processed through the grievance procedures established by the collective bargaining agreement and was ultimately denied by the District. The Association then processed the grievance to arbitration, alleging that the controlling provision in the collective bargaining agreement provided as follows:

Except as this Agreement shall otherwise provide, all terms and conditions of employment applicable on the signing date of this Agreement as established by the rules, regulations and/or written policies of the Board in force on said date, shall continue to be so applicable during the term of this Agreement. Unless otherwise provided in this Agreement, nothing contained herein, shall be interpreted and/or applied so as to eliminate, reduce, or other-

wise detract from any teacher benefit existing prior to its effective date. It is likewise understood that all inherent management perogatives [sic] existing at the present time and not specifically negotiated as a part of this Agreement shall continue to be in full force and existence during the contractual period of this Agreement.

The arbitrator sustained the grievance, and upon appeal to Commonwealth Court, 24 Pa.Cmwlth. 266, 356 A.2d 842, that Court reversed the decision of the arbitrator. We granted a Petition for Allowance of Appeal.

The issue, simply presented, is whether, in an arbitration of a grievance by a public employee under a collective bargaining agreement, *where the agreement contains no integration clause*, an award sustaining an agreement based upon a past practice of the parties, which had been modified by an oral agreement during the agreement, is within the limits of the law.

■ The test for determining whether an arbitrator has properly fulfilled his function has been set forth by this Court. We said in *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977), the test is to be as follows:

> To state the matter more precisely, where a task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the Judiciary if "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention . . ." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, [at] 1128 (3d Cir. 1969). It was this approach which was meant to be suggested by the brief statement in *International Brotherhood of Firemen and Oilers, [v. School Dist. of Philadelphia*, 465, Pa. 356, 350 A.2d 804] quoted *supra*, that "the arbitrator's

interpretation of the contract must be upheld if it is a reasonable one." 465 Pa. at 366, 350 A.2d at 809.

■ It is, thus, the proper function of an arbitrator to arrive at a reasonable interpretation of the collective bargaining agreement and to apply that interpretation to the facts before him. The arbitrator must look at the full context of the agreement, along with ". . . other indicia of the parties' intention . . ." in determining the intention of the parties.

■ We said in *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 31–38, 381 A.2d 849, 851–855 (1977) (footnotes omitted), where we were dealing with a collective bargaining agreement containing an integration clause:

As this Court noted in *Board of Education of Philadelphia v. Federation of Teachers Local No. 3,* 464 Pa. 92, 99, 346 A.2d 35, 39 (1975), Pennsylvania labor policy not only favors but requires the submission to arbitration of public employee grievances "arising out of the interpretation of the provisions of a collective bargaining agreement". See also *Lincoln System of Education v. Lincoln Association of University Professors,* 467 Pa. 112, 354 A.2d 576 (1976). From this policy is derived the corollary principle that where, as here, an arbitrator has interpreted a collective bargaining agreement in favor of the arbitrability of the grievance before him, a reviewing court should be slow indeed to disagree. As the Supreme Court of the United States observed in *United Steelworkers of America v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960):

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."

. . . *Although the non-inclusion of the practices in the bargaining agreement does not necessarily compel the*

*conclusion that past practices are not impliedly so incorporated, the existence in a contract of a broad integration clause, if it means anything, does clearly negate the notion that the parties meant to include any terms or conditions, including those based only on past practices, not specifically incorporated in the written contract or reasonably inferable from its provisions. We think that this provision is dispositive of this case. . . .*

In deciding as we do, we hold only that where a collective bargaining agreement not only makes no mention whatever of past practices *but does include a broad integration clause,* an award which incorporates into the agreement, as separately enforceable conditions of the employment relationship, past practices which antedate the effective date of that agreement cannot be said to "draw its essence from the collective bargaining" agreement. *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). We hasten to add that courts are not to become super-arbitrators and are bound to defer to the arbitrators' findings relative to the intent of the parties as the arbitrators perform their task of interpreting labor contracts negotiated under PERA. . . . (Emphasis added)

In the case before us, not only did the collective bargaining agreement contain no *"broad integration clause"*, but, in fact, it contained none at all, the practice existed prior to the collective bargaining agreement, and was regarded between the parties as binding, and, after modification was recognized as binding and controlling, although not reduced to writing. There is nothing in the agreement which prohibits the establishment of a new practice or modification of an existing practice by oral agreement of the parties. It is entirely reasonable for an arbitrator to hold that an oral modification of an unwritten past practice is reasonable, taking the view that such a modification would not be inconsistent with written modification requirements of the agreement. Such an interpretation is certainly not prohibit-

ed by a reading of the agreement, and is, thus, quite reasonable.

Taking into consideration our limited scope of review, we hold that the interpretation of the arbitrator in this issue is a reasonable one which is within the limits of the law.

The Order of the Commonwealth Court is reversed.

ROBERTS, J., filed a concurring opinion in which NIX, J., joins.

LARSEN, J., concurs in the result.

KAUFFMAN, J., filed a concurring opinion in which EAGEN, C. J., joins.

KAUFFMAN, Justice, concurring.

As stated by Justice Pomeroy in *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty*, 473 Pa. 576, 593–94, 375 A.2d 1267, 1275 (1977),

> [W]here a task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention . . . ." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969).

In adopting such a highly circumscribed scope of judicial review, we have recognized the policy considerations which command that judicial interference in the arbitration of labor disputes under collective bargaining agreements be kept to a minimum.[1] Bearing in mind the limited scope of

1. In the *Steelworkers Trilogy, United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise*

judicial review, I turn to a consideration of the collective bargaining agreement (hereinafter "Agreement") in this case.

The Agreement expressly recognizes the existence of unwritten past practices[2] and by means of what is commonly referred to as a "past practice provision,"[3] stipulates for

*Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the Supreme Court of the United States established the federal policy that arbitration, as opposed to litigation, is the preferred manner of resolving labor disputes under collective bargaining agreements. We, too, have recognized that the special considerations present in the field of labor relations necessitate deference by the courts to an arbitrator's interpretation of a collective bargaining agreement. *See Community College of Beaver County, supra; County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. 27, 381 A.2d 849 (1977).

2. The meaning of "past practice" has been described as follows: "A custom or practice is not something which arises simply because a given course of conduct has been pursued by Management or the employees on one or more occasions. A custom or a practice is a usage evolved by men as a normal reaction to a recurring type situation. It must be shown to be the *accepted* course of conduct characteristically repeated in response to the given set of underlying circumstances. This is not to say that the course of conduct must be *accepted* in the sense of both parties having agreed to it, but rather that it must be *accepted* in the sense of being regarded by the men involved as the *normal* and *proper* response to the underlying circumstances presented." Sylvester Garrett, Chairman, Board of Arbitration, U.S. Steel—Steelworkers, Grievance No. NL–453, Docket No. N–146, January 31, 1953. Reported at 2 *Steelworkers Arbitration Bulletin* 1187. (Emphasis in original.)
*County of Allegheny v. Allegheny County Prison Employees Independent Union*, 476 Pa. at 34, 381 A.2d at 852.

3. Article V of the Agreement provides, in pertinent part:
   A. Savings Clause
   Except as this Agreement shall otherwise provide, all terms and conditions of employment applicable on the signing date of this Agreement as established by the rules, regulations and/or written policies of the Board in force on said date, shall continue to be so applicable during the term of the Agreement. Unless otherwise provided in the Agreement, nothing contained herein, shall be interpreted and/or applied so as to eliminate, reduce, or otherwise detract from any teacher benefit existing prior to its effective date. It is likewise understood that all inherent management prerogatives existing at the present time and not specifically negotiated as part of this Agreement shall continue to be in full force and existence during the contractual period of this Agreement.

their continuation. The relevant unwritten practice in effect at the time the Agreement was signed was for the School District to grant leaves of absence without pay to teachers for attendance at Association conferences and meetings. Thereafter, the School District and the Association entered into *and implemented* an oral modification of the practice providing that teachers who were granted leave to attend Association conferences would be paid. The new arrangement, which lasted for an entire school year, unilaterally was discontinued by the School District, giving rise to the grievance sustained here by the arbitrator.

A mutually agreed upon subsequent oral modification expanding an unwritten practice existing on the effective date of the Agreement would not offend Article II(B) thereof, which provides: "This Agreement shall not be modified in whole or in part by the parties except by an instrument in writing, duly executed by both parties." *See Wagner v. Graziano Construction Co.*, 390 Pa. 445, 136 A.2d 82 (1957). In any event, the School District effectively waived any such objection when it voluntarily implemented the expanded practice for an entire year. *See Universal Builders, Inc. v. Moon Motor Lodge, Inc.*, 430 Pa. 550, 244 A.2d 10 (1968); S. Williston, 4 *Williston on Contracts*, § 591 at 203–207.

We should defer to the arbitrator's award sustaining the grievance since it was rationally derived from and "[drew] its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, 1428 (1960); *Community College of Beaver County, supra.* Accordingly, I concur in the result reached by the majority.

EAGEN, C. J., joins in this concurring opinion.

ROBERTS, Justice, concurring.

As observed by the majority, the scope of judicial review of an arbitrator's award is highly circumscribed. "It is the arbitrator's construction which was bargained for and so far as the arbitrator's decision concerns the construction of the contract, the courts have no business overruling him because

their interpretation of the contract is different from his." *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960). See also *Bole v. Nationwide Insurance Co.,* 475 Pa. 187, 193, 379 A.2d 1346, 1349 (1977) (Roberts, J., dissenting).

Applying this standard of review, I am satisfied that the arbitrator's award was proper and should be upheld. Accordingly, I concur in the result reached by the majority.

NIX, J., joins this opinion.