District Council 83, American Federation of State, County and Municipal Employees, AFL-CIO, Appellant *v.* Hollidaysburg Area School District, Appellee.

Argued November 18, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., ROGERS, BLATT, CRAIG, WILLIAMS, JR. and PALLADINO. Reargued June 2, 1981, before President Judge CRUMLISH and Judges MENCER, ROGERS, BLATT, WILLIAMS, JR., CRAIG and MACPHAIL.

*Alaine S. Williams,* with her *Jonathan Walters, Kirschner, Walters & Willig,* for appellant.

*David P. Andrews,* with him *J. Michael Dorezas, Patterson, Evey, Routch, Black & Behrens,* for appellee.

OPINION BY JUDGE CRAIG, July 17, 1981:

With respect to this appeal from a court order vacating an arbitrator's award, the opinion of the Court of Common Pleas of Blair County states the facts as follows:

> On December 7, 1977, . . . local union number 2952H of District Council 83 of the American Federation of State, County and Municipal Employees (AFSCME) AFL-CIO, filed a contract grievance against the employer and petitioner, Hollidaysburg Area School District, on behalf of the two senior low in overtime hours employees of the maintenance and custodial workers included in the bargaining unit. This grievance alleged that on December 5 and 6, 1977

> 'Superintendent of building and grounds, Robert Hampton, was observed plowing snow on school property at 8:00 P.M.—9:20 P.M.—10:35 P.M. and 7:00 A.M. Mr. Hampton made no attempt to call a bargaining unit employee to perform this bargaining unit work in violation of the above designated article (Article 5, Paragraph G) of the Union Agreement.'

> In accordance with the terms of the labor contract, the matter was submitted to arbitration and an arbitration hearing was held before

Arbitrator Raymond F. Crawford on July 17, 1978. On August 17, 1978, the Arbitrator issued an Opinion and Award sustaining the grievance, as follows:

'The grievance is sustained. The School District is required to pay two (2) employees in the custodial and maintenance bargaining unit, five and one-half hours each, at time and one-half their regular rate of pay at the time of the incident, and who were qualified to plow snow on December 5, 1977 and whose cumulative overtime were the lowest among the qualified.'

Subsequently, pursuant to Pennsylvania Rule of Civil Procedure 247 and 5 P.S. Sec. 173, the School District petitioned this Court to modify, vacate, or set aside the arbitration award.

Because the common pleas court, for the reasons stated below, proceeded to vacate the arbitrator's decision, AFSCME has brought this appeal. The issue arises from the now-familiar principles governing arbitration awards under collective bargaining agreements, which the court below accurately stated as follows:

It is beyond dispute that in this Commonwealth:

'An arbitrator's award in a labor dispute is legitimate as long as it draws its essence from the collective bargaining agreement.' Community College of Beaver County vs. Community College of Beaver County Society of the Faculty, 473 Pa. 576, 375 A.2d 1267, 1274 (1977).

Thus, 'where a task of an arbitrator has been to determine the intention of the contracting parties as evidenced by the collective bargaining agreement and the circumstances surround-

ing its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if "the interpretation can in any rational way be derived from the agreement viewed in light of its language, its context, and any other indicia of the parties intention." ' Beaver, supra at 1275.[1]

The court below vacated the award because it found the award to be based "not upon the peculiar circumstances" of the case but only upon, as the court characterized it, "basic concepts of collective bargaining" and the arbitrator's interpretation of the recognition clause of the contract. Hence the court below found that the award could not be said to have been rationally derived from the agreement, its language, its context or any other index of intention. The common pleas court thus found that the arbitrator had "inserted a non-existent provision" into the contract.

In reaching that conclusion, the court noted the arbitrator's straightforward statement that:

As to the specific language in the Agreement, the contract is silent on the subject of barring supervisory personnel from performing bargaining unit work.

---

[1] Confirming the above limitations on judicial review as stated by the lower court, we add the following quotation from the United States Supreme Court:

[P]lenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. . . . [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 599 (1960).

Concerning the effect of that statement, we can agree neither with AFSCME nor with the court below. AFSCME counsel contends that the statement means only that there is no prohibition against maintenance work being done by a supervisor, leaving open the question of management's obligation to have some maintenance workers from the bargaining unit participate in maintenance work. The context does not support such a tenuous distinction. The arbitrator, by making clear that he was speaking of the existence or non-existence of "specific language", was simply stating that there is no *express* provision in the contract on the issue before him. By the same token, we are not in agreement with the common pleas court's view that the arbitrator thus acknowledged the contract to be empty of all pertinence to the issue and therefore proceeded to insert a non-existent provision.

Our view—that the arbitrator, finding no *express* language, properly proceeded to examine the contract for *implied* effect—is confirmed by the fact that the arbitrator followed his above-quoted statement with:

Bargaining unit work is not precisely mentioned, however, the Recognition article expressly designates the Union as exclusive representative for purposes of collective bargaining with respect to wages, hours and other terms and conditions of employment for the custodial and maintenance employees.

The arbitrator therefore believed it to be "germane for the Union to question whether snowplowing is within the sphere of what is considered custodial and/or maintenance work. ...."

In his examination of implications, the arbitrator considered, not only the recognition clause quoted by him, but also the Management Rights Article and the overtime distribution provision cited by AFSCME in filing the grievance, being Article V, G., which stated:

G. Overtime shall be distributed as equally as possible by job classification over a twelve (12) month period.

Although he recognized that the Management Rights Article retains for the School District its inherent managerial rights and functions, the arbitrator understandably declined to consider snowplowing to be an exclusive management function or prerogative. Indeed, the arbitrator's reasoning was that the exclusion of the maintenance workers from performance of this maintenance work resulted in an adverse effect upon the exercise of supervision; he stated:

The School District made no attempt to call out any of the custodial and/or maintenance employees to aid in the snow removal. They elected to allow the Superintendent to work all night alone plowing the snow, go home on the morning of December 6 to rest, and leave the workers without adequate supervision for that day.[2]

From the fundamental concept that the agreement gave recognition to those employed to do maintenance work, the arbitrator concluded that they should be dealt with, and involved, when a substantial piece of maintenance work was being done. He said:

It is the opinion of the arbitrator that the plowing of snow is work that normally should be performed by the maintenance and/or custodial employees covered by the Agreement, and simply because the Superintendent of Buildings and Grounds had performed much of the snow plowing in the past, is not to say that such action cannot be repudiated by the intro-

---

[2] The arbitrator also peripherally noted a hindsight interpretation reflected in the fact that, after the grievance, the School District's maintenance superintendent had been instructed to get persons other than himself to do the snowplowing.

duction of a collective bargaining agreement covering a group of employees whose work function is to do maintenance and custodial work.

From all of the above implications, the arbitrator concluded that "the School District deprived the members of the collective bargaining unit of work that normally should have been performed by that group."

Our own interpretation of the implications of the agreement may well differ from the interpretation made by the arbitrator. However, we cannot consider it to be irrational or to be foreign to the essence of an agreement by which the school district contracted with maintenance workers to do maintenance work.

Of conclusive impact is the recent decision in *Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981), in which the Pennsylvania Supreme Court said:

The fact that this arbitrator in analyzing this dispute may have failed to properly perceive the question presented or erroneously resolved it, does not provide justification for judicial interference. Our inquiry ends once it is determined that the issue properly defined is within the terms of the agreement.

492 Pa. at 521, 424 A.2d at 1313.

*Leechburg* is particularly germane because the arbitrator's conclusion, as there affirmed, was also based upon the implications of the agreement, rather than upon its express provisions.

*County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 381 A.2d 849 (1977) on which the School District here places primary reliance, is, we believe, distinguishable. In that case, an arbitrator's award approved a demand

of jail guards that their on-the-job mealtimes be provided with guard supervision and with any food available from the jail kitchen. The Pennsylvania Supreme Court, by a three-two decision, held the award invalid because, the contract lacking any express provision on the subject, it had been based upon past practice of the parties; the court concluded that the presence and wording of a broad integration clause in the contract negatived any obligation based only on past practice and not incorporated in, or reasonably inferable from, the contract provisions.

In the present case, although the contract also contains a broad integration clause, the award is not founded upon any past practice which might be deemed to be negatived by that integration clause, but is drawn from the present agreement's own implications. Moreover, the claim in the present case, that maintenance workers be involved in maintenance work, is quite related to and therefore more reasonably inferable from the agreement than are fringe benefit matters such as the details surrounding meal periods.

We therefore will reverse and order reinstatement of the award.

ORDER

AND Now, this 17th day of July, 1981, the order of the Court of Common Pleas of Blair County dated August 17, 1979, is reversed and the award of the arbitrator is reinstated.

---

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent.

In *Leechburg Area School District v. Dale,* Pa.    ,    , 424 A.2d 1309, 1313 (1981), our Supreme Court stated that "[o]ur inquiry ends once it is determined that the issue properly defined is within

the terms of the agreement." Therefore, the heart of the matter is that the issue before the arbitrator must be "within the terms of the agreement."

The arbitrator here held that "the contract [agreement] is silent on the subject of barring supervisory personnel from performing bargaining unit work."

Surely, we must accept the corollary of *Leechburg* that, once the arbitrator determines that the issue is not within the terms of the agreement, his inquiry and his power to resolve the issue ends.

President Judge CRUMLISH and Judge MACPHAIL join in this dissent.