In the Matter of Arbitration Between the City of Pittsburgh and American Federation of State, County and Municipal Employees, District Council 84, Local No. 2719. City of Pittsburgh, Appellant.

Argued May 3, 1982, before Judges ROGERS, BLATT and CRAIG, sitting as a panel of three.

*Bernard M. Schneider,* Assistant City Solicitor, with him *Mead J. Mulvihill, Jr.,* City Solicitor, for appellant.

*Alaine S. Williams, Kirschner, Walter & Willig,* for appellee.

OPINION BY JUDGE CRAIG, June 30, 1982:

The City of Pittsburgh questions an order by the Court of Common Pleas of Allegheny County dismissing its appeal from an arbitrator's award which directed the city to appoint employee/grievant Pamela Swann, a member of the appellee-union,[1] as an Engineering Technician I (ET-I) with back wages.

Swann was one of three applicants for an ET-I position which the city posted in December of 1979. Without making a prior determination as to whether the applicants fulfilled the minimum qualifications, the Assistant Director for the Department of Personnel, who also functioned as the Secretary and Chief

---

[1] American Federation of State, County and Municipal Employees, District Council 84, Local No. 2719.

Examiner for the Civil Service Commission, forwarded the three applications to the Director of the Department of Public Works with directions to select an applicant and return the material to her. The applicant selected by the director was not a member of the collective bargaining unit; his experience included a summer job with a utility subcontractor—background which the DPW Supervisor and Director found to satisfy the posted requirements.[2]

Because she had not received any word on her first application, Swann applied again when, a month later, a second posting for the job appeared, directed to all interested persons and was not restricted to city employees only, as the first posting had been. Although similar, the job requirements were stated more specifically.[3] The Assistant Director for the Department of Personnel reviewed the thirty-five applications and concluded that Swann was not qualified.

Swann filed a grievance on the basis that she was not notified of eligibility for the ET-I position before the second posting, which allowed lesser qualified in-

[2] The posted job requirements stated:

1. City employment

2. "Technical training courses or experience relating to construction or an equivalent combination of training or experience preferred.

3. Successful completion of the Department of Public Works' Construction Inspection Class prior to inspection assignments".

[3] The requirements for the second job posting stated:

1. City residents

2. "Six months experience relating to construction; technical training courses preferred or an equivalent combination of training or experience

. . . .

Note: Successful completion of the Department of Public Works' Construction Inspection Class may be required prior to inspection assignments."

dividuals to apply before the list of eligible city employees was exhausted; she requested "[i]nstatement ... prior to the hiring of any individual applying under the new advertisement." After a meeting with the Director of DPW, Swann amended her grievance; she requested retroactive compensation for an earlier period during which she had voluntarily assumed certain duties normally performed by ET-I's, so that she could learn the position while then working under a designation of Clerk-Typist for the DPW; she also requested immediate instatement in the ET-I position, rescission of her disqualification, and official notification of her eligibility. The city denied the grievance, claiming that the proper remedy was a proceeding before the Civil Service Commission.

The arbitrator based his order to grant Swann the ET-I position on Article XIV C of the collective bargaining agreement, which outlined the procedures for filling vacancies without an examination, holding that Swann was entitled to a "first look" preference in filling entry level vacancies as an employee member of the bargaining unit. Subsections (3) and (4) of that article state:

(3) It is agreed that only promotional vacancies above entry level will be filled in accordance with these procedures; however, *the City will look first to and accept applications from its own employees, but shall not be limited to such employees in filling such vacancies.* (Emphasis supplied)

(4) A qualified employee shall be one that meets the minimum requirements of the job classification as determined by the Civil Service Commission.

The arbitrator concluded that the "first look" preference applied only to entry level positions, with

the formal job vacancy assignment requirements of Article XIV C(2)[4] limited to non-entry level openings. He found that the contract was both specific and limited in its reference to "employees," those being "members of the bargaining unit under the contract as defined by the Pennsylvania Labor Relations Board in its case identified as PERA-R-8833-W."[5]

The arbitrator outlined the scope of the contract preference:

> While [the] preference does not guarantee appointment, it does place grievant ahead of non-bargaining unit applicants . . . [T]he Employer has the right to appoint other than its employees, so long as it does not act in an arbitrary, capricious or bad faith manner.

The pivotal issue defined by the arbitrator was whether the qualifications of the non-member appli-

---

[4] Article XIV Work Force Changes

. . . .

(2) When a vacancy is to be filled without examination and it is determined by the City that the skill and ability of the qualified employees bidding are relatively equal, the vacancy shall be awarded to the senior qualified employee bidding from any department. When a professional vacancy requiring highly specialized skills, training, expertise or experience is to be filled, as determined by the City, the City will look first to and accept applications from its own employees, but shall not be limited to such employees in filling such vacancy.

[5] Article I of the contract states:

The City recognizes the Union as the exclusive collective bargaining agent with respect to wages, hours, and other conditions of employment for all employees occupying jobs in the bargaining unit as certified on 12/12/77, by the Pennsylvania Labor Relations Board PERA-R-8833-W.

*The term "employee" as used in this Agreement applies to all individuals occupying such jobs.* (Emphasis supplied.)

cant ultimately selected were so significantly superior to Swann's that the city could ignore Swann's "first look" preference. Finding that the city failed adequately to check Swann's qualifications, thus arbitrarily excluding Swann and avoiding her contractual preference, the arbitrator sustained the grievance and ordered the city to appoint Swann an ET-I as of the date the other applicant had received the apointment, with damages from such date.[6]

The city first questions the arbitrator's jurisdiction to determine Swann's qualifications for the position, contending that arbitration over the Civil Service Commission's hiring decisions is prohibited by the General Service Act,[7] which provides an exclusive procedure to challenge the Commission's initial determination as to qualification, and the Public Employee Relations Act.[8]

---

[6] In affirming the arbitrator's award, the common pleas court concluded that the arbitrator had correctly assumed jurisdiction over the dispute. However, the court misstated the basis of the arbitrator's decision, holding that the "arbitrator merely applied Article XIV of the Agreement and enforced the rights of Swann, as senior qualified employee, to apply for the subject position."

As outlined in the opinion text above, the arbitrator clearly premised his decision on the "first look" preference of Article XIV C(3), holding that the Article XIV C(2) "senior qualified employee" preference applied only to non-entry level vacancies.

In any event, the court's misstatement is immaterial both with respect to its decision and ours; the limited scope of review outlined in *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981) permits judicial inquiry only into whether the terms of the collective bargaining agreement encompassed the subject matter of the dispute, while precluding judicial examination of the merits of the arbitrator's decision.

[7] Section 10 of the Act of May 23, 1907, P.L. 206, *as amended*, 53 P.S. §23442; Section 28 of the Act, 53 P.S. §23461.

[8] Section 703 of the Act of July 23, 1970, P.L. 563, 43 P.S. §1101.703 states:

The contract's grievance procedure, found in Articles XV and XVI, provides for arbitration of "any complaint, dispute or request by an employee or the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement." Article XXI, delineating the "Scope of Agreement," states: "[t]his Agreement spells out the total agreement in its entirety between the parties, including wages, salaries, pensions and all fringe benefits, and there shall be no other additions or changes during the term of the contract, except as mutually agreed to by the Mayor and the Union."

Our courts have been vigilant in protecting the arbitrator's domain, holding that the arbitrator must be permitted to decide the arbitrability of a matter, "unless the contract expressly excludes a particular grievance from arbitration." *Mazzie v . Commonwealth,* 495 Pa. 128, 432 A.2d 985, 990 (1981), *citing Pittsburgh Joint Collective Bargaining v. City of Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978) and *Board of Education of the School District of Philadelphia v. Philadelphia Federation of Teachers Local No. 3, AFT, AFL-CIO,* 464 Pa. 92, 346 A.2d 35 (1975). Where the arbitrator has decided in favor of the arbitrability of a grievance, reviewing courts have been reluctant to interfere. *Mazzie, Shippensburg Area Education Association v. Shippensburg Area School District,* 42 Pa. Commonwealth Ct. 128, 400 A.2d 1331 (1979).

---

The parties to the collective bargaining process shall not effect or implement a provision in the collective bargaining agreement if the implementation of that provision would be in violation of, or inconsistent with, or in conflict with any statute or statutes enacted by the General Assembly of the Commonwealth of Pennsylvania or the provisions of municipal home rule charters.

In *Pittsburgh Joint Collective Bargaining Committee,* the Supreme Court resolved the issue of the employer's capacity to submit an employee discharge dispute to arbitration, stating:

> Where the decision to commit a matter to grievance arbitration arises from the terms of a contract between the parties rather than as a result of statutory mandates, the policy to favor this type of dispute resolution is even stronger. Here the alleged obligation to submit the question to arbitration flows directly from the terms of the collective bargaining agreement and not Section 903 of Act 195. The Union's argument is premised upon the fact that Sections 5 and 6 of the agreement provide the procedure for obtaining redress for the asserted grievance. (Footnote omitted.) This court has recognized that alternative dispute resolutions arrived at voluntarily by the parties to a contract is to be fostered. . . .

481 Pa. at 72, 391 A.2d at 1321.

With the procedure for filling vacancies clearly set forth in the contract, along with a grievance and arbitration mechanism for resolution of disputes arising from the terms of the agreement, we must follow the rationale of *Pittsburgh Joint Collective Bargaining Committee* that the city cannot refuse to abide by provisions for arbitration which were the result of good faith bargaining where to do so "would invite discord and distrust and create an atmosphere wherein a harmonious relationship would virtually be impossible to maintain." 481 Pa. at 74, 391 A.2d at 1322.

Thus here, as in other state and municipal employment relation situations, the aggrieved employee may elect the civil service remedy or the collective bargaining remedy.

Absent specific contract language limiting review of job application determinations to the Civil Service Commission, we must hold that the arbitrator's decision to assume jurisdiction was rationally "derived from the collective bargaining agreement, viewed in light of its language, its context and any other indicia of the parties' intention." *West Jefferson Hills School District v. Jefferson Federation of Teachers*, 61 Pa. Commonwealth Ct. 374, 433 A.2d 643, 645 (1981) citing *Port Authority of Allegheny County v. Amalgamated Transit Union*, 492 Pa. 494, 497, 424 A.2d 1299, 1300 (1981). The state Supreme Court has reaffirmed the policy of broad judicial deference to an arbitrator's determination regarding the arbitrability of the subject matter of a grievance in *Scranton Federation of Teachers, Local 11147, AFT v. Scranton School District* (No. 413 January Term, 1979, filed April 19, 1982).

The city's assertion that the arbitrator had no contractual authority to review the ineligibility determination because that decision had not been re-examined by the Commission on appeal, and was therefore not final, is just an alternate statement of its argument that the civil service appeal process is the proper forum for relief, whether as a substitute for the arbitral process, or as a prerequisite to it.

Finding no error in the arbitrator's conclusion that the job qualification and application dispute was a proper subject of arbitration under the contract, we are precluded from further inquiry into the validity of his subsequent interpretation of its terms. *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981), *Port Authority of Allegheny County*.

Accordingly, we affirm the order of the common pleas court.

290

Now, June 30, 1982, the order of the Court of Common Pleas of Allegheny County, dated July 16, 1981, No. SA 376 of 1981, is affirmed.