**In the Matter of the Arbitration Between the School District of The City of Erie and The Erie Education Association. Erie Education Association, Appellant.**

384

Argued May 6, 1982, before President Judge CRUMLISH and Judges CRAIG and DOYLE, sitting as a panel of three.

*George Levin,* for appellant.

*John W. Beatty,* for appellee.

OPINION BY JUDGE CRAIG, July 13, 1982:

In this labor arbitration appeal, the Erie Education Association questions an order by the Court of Common Pleas of Erie County reversing an arbitrator's decision that a revision of the sabbatical leave policy of the Erie School District had violated its collective

bargaining agreement with the association. The reversal was on the basis that the decision "could not have been drawn from the essence" of the contract.

We reverse.

In its only reference to sabbatical leaves, the contract, which was effective from July 1, 1978 through June 30, 1980, stated:

Sabbatical leaves shall be granted to teachers in accordance with the School Code, Article XI, F. Sections 1166, 1167, 1168, 1169, 1170, 1171.[1]

Since 1937, the district had used a sabbatical leave plan for professional employees which imposed certain conditions and restrictions on the granting of approved leaves.[2] In March of 1980, before the expiration of the contract, the district amended the plan without negotiation, apparently promulgating more restrictive regulations and limiting the number of sabbatical leaves which could be granted in a school year.[3]

Following the association's unfair labor practice charge in May of 1980, alleging that the district vio-

---

[1] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§11-1166 through 11-1171.

[2] The policy, among other conditions, required a physician's recommendation for health leaves, an itinerary submission for travel leaves, along with a statement of educational advantages to be obtained from the travel, and regulated the length and frequency of leaves, as well as the salary while on leave. The policy also stated that the board of school directors "may set forth the rules and regulations under which sabbatical leave may be granted to employees," and prohibited the district from limiting the number of leaves granted in any school year to less than 10% of the number of persons eligible for sick leave employed in the district. Only the last two stipulations were taken from the language of Sections 1167 and 1171 of the School Code, two of the sections cross-referenced by the collective bargaining agreement.

[3] The arbitrator stated that the parties had stipulated that the regulations were more stringent and limited the total number of leaves granted. In its petition to the common pleas court to review

lated the Public Employee Relations Act[4] by unilaterally revising the regulations governing sabbatical leave, the Pennsylvania Labor Relations Board ordered the matter referred to arbitration through the grievance procedure outlined in the contract.

The arbitrator framed the issue as "whether the change in the administration of the sabbatical leave policy is in violation of the collective bargaining agreement."

After comprehensively reviewing the parties' positions, the evidence, and all the sections of the School Code cross-referenced by the contract, the arbitrator held that, once the bargaining had closed on the agreement, the district was no longer free to withdraw existing benefits, stating:

> [Management] has an implied obligation to maintain [existing benefits] including those benefits which were not revoked . . . during negotiations and to which the contract makes no reference. . . . The Association signed the collective bargaining agreement . . . with the understanding that the sabbatical leave plan, which was in effect at the time the parties negotiated, would remain in effect.

the arbitration award, however, the district averred that the new regulations did not restrict the number of teachers eligible for sabbatical leave, but only pertained to time requirements for leave applications and reporting conditions; the district further averred that the previous leave policy was similar to the new one and might even be more stringent.

Although this transition in the district's position remains unexplained because we have no transcript of the arbitration hearing, the statement of alleged violation contained in the grievance clearly indicates that the association was concerned with the district's failure to negotiate the conditions rather than with any specifics of the new policy.

[4] Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. §§1101.101 through 1101.2301.

The common pleas court held that the association had bargained away the right to limit the district's power to alter the leave policy, stating that "the authority to promulgate additional regulations regarding sabbaticals is expressly delegated to the school directors by Section 1171 (of the School Code) and this delegation is expressly contained in Paragraph K of the bargaining agreement."

Concluding that the arbitrator had ignored the clear language of the contract and impermissibly looked behind its terms, the court reversed.

Under *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981), judicial review of an arbitrator's decision is limited by the "essence test," requiring "a determination as to whether the terms of the agreement encompass the subject matter of the dispute." 492 Pa. at 521, 424 A.2d at 1312.

The district contends that the essence test has been superseded by enactment of the Pennsylvania Uniform Arbitration Act,[5] and that Section 7302(d)(2) outlines the applicable judicial review of arbitration awards:

(d)  Special Application.—

(1)  Paragraph (2) shall be applicable where:

(i)  The Commonwealth government submits a controversy to arbitration.

(ii)  A political subdivision submits a controversy with an employee or a representative of employees to arbitration.

(iii)  Any person has been required by law to submit or to agree to submit a controversy to arbitration pursuant to this subchapter.

(2)  Where this paragraph is applicable a court in reviewing an arbitration award pursu-

_____
[5] Act of October 5, 1980, P.L. 693, 42 Pa. C. S. §§7301-7362.

ant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

However, as noted in a very useful recent commentary on the issue, Sherman, *Analysis of Pennsylvania's Arbitration Act of 1980,*[6] the substance of subsection (d)(2) was derived from section 11(d) of the original arbitration act of 1927.[7] Two cases interpreting the effect of the act on the scope of review, *Port Authority of Allegheny County v. Amalgamated Transit Union,* 492 Pa. 494, 424 A.2d 1299 (1981), and *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977), established that the standards of judicial review contained in the 1927 act and those of federal decisional law are not significantly different:

_____

[6] 43 U. Pitt. L. Rev. 393 (1982).

[7] Act of April 25, 1927, P.L. 381, 5 P.S. §§161-179, *repealed by* the Act of October 5, 1980, P.L. 693, 42 Pa. C. S. §20002.

In contending that "there does not appear to be any conscious attempt by the legislature to change the standard of judicial review of labor arbitration awards for political subdivisions," Professor Sherman notes that a special report, entitled Pennsylvania Bar Association Judicial Code Explanation, states:

The Code as originally drafted contemplated the inclusion as Subchapter A of this chapter of the revised Uniform Arbitration Act, replacing the act of April 25, 1927 (P.L. 381, No. 248) (5 P.S. §161 et seq.) Because of *the need* for careful study *to avoid changes in the judicial review of public employer-employee arbitration decisions,* this subchapter was spun off for separate consideration as S.B. 207. (Emphasis in original.)

43 U. Pitt L. Rev. at 392-393.

Under our prior interpretations of §11(d) of [the 1927] act, we must respect the award of the arbitration panel, including its definition of its own jurisdiction, so long as it is "in any rational way . . . derived from the [collective bargaining] agreement . . ."

*Port Authority of Allegheny County* at 497, 424 A.2d at 1300.[8] Thus, we agree with Professor Sherman's conclusion that:

[T]he trend under the 1927 act was for the Supreme Court of Pennsylvania to use a standard of judicial review for labor arbitration awards which was not greatly dissimilar from that which would apply if the 1927 act were not applicable. For this reason, even if subsection (d) (2) of the new arbitration act is applied to labor

---

[8] Professor Sherman's summary of the *Community College of Beaver* case revealed a similar result:

In a 1977 case involving the Community College of Beaver County the Supreme Court of Pennsylvania established the following propositions. Collective bargaining agreements under Act 195 are written contracts within the meaning of the 1927 act. Although there is some conflict between the two statutes, Act 195 did not impliedly repeal the 1927 act. Where conflict does exist, Act 195 takes precedence. The policy of *Enterprise Wheel* concerning judicial review of arbitration awards is sound. There is no conflict between the standard of judicial review contained in the 1927 act and that recognized in federal decisional law in the field of labor relations. The two standards are not significantly different. Introduction of the "n.o.v." concept in section 11(d) of the 1927 act into arbitration does not dictate a much closer or different scrutiny of an arbitration award from that available under *Enterprise Wheel*. An arbitrator's interpretation of an agreement should be respected by the court if "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. . . ."

43 U. Pitt. L. Rev. at 393.

arbitration awards rendered for political sub-divisions under Act 195, the result may not be greatly different from that which would be reached if subsection (d)(2) of the new arbitration act is deemed to be inapplicable to such awards.

Finding no bar to application of the standards of review outlined in *Leechburg,* we must examine the contract terms to determine if the dispute was arbitrable.

The question of whether an issue is a proper subject for arbitration—and thus within the jurisdiction of an arbitrator—is usually answered by the terms of the agreement, *Port Authority of Allegheny County.* However, that determination was made more difficult here by the ambiguous nature of the contract reference to sabbatical leave, that it "be granted . . . in accordance with the School Code. . . ."

The arbitrator was first faced with answering the threshold question of whether the cross-reference to the School Code displaced the previous pattern with respect to sabbatical leaves, subjecting the leave policy solely to the statutory authority of the school board, or whether the contract provision implicitly incorporated the prevailing practice as an enlargement of the terms intended to govern leave policy as a bargained item. *See County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 39, 381 A.2d 849, 855 (1977); *School District of Pittsburgh v. Local Union 297,* 46 Pa. Commonwealth Ct. 192, 407 A.2d 67 (1979).[9]

---

[9] The *Allegheny County* case refers to four situations in which evidence of past practice may be used by arbitrators, the first being "to clarify ambiguous language." 476 Pa. at 34, 381 A.2d at 852, citing R. Mittenthal, *Past Practice and the Administration of Collective Bargaining Agreements,* Proceedings of the 14th Annual Meeting of the National Academy of Arbitrators 30 (1961).

In answering that pivotal question of interpretation, the arbitrator resolved the threshold issue of arbitrability by determining that the sabbatical leave policy was subsumed within the contract agreement terms and was therefore arbitrable.

The district contends that the contract cross-reference to Section 1171 of the School Code, which gives the board of school directors the right to "make such regulations as they may deem necessary to make sure that employees on leave shall utilize such leave properly for the purpose for which it was granted . . . ," indicates that the district retained the right to promulgate regulations at any time during the contract term.

We cannot agree.

The power to make regulations pertaining to leave policy is not tantamount to a statutory declaration that the area is removed from bargaining; the parties to a contract may agree to restrict or allow negotiation over matters which the statute designates as within school board power. Indeed, any collective bargaining by a public agency must necessarily involve matters committed by law to the agency's powers; only when the statute mandates exclusivity in exercise of the function would it be withdrawn by law from collective bargaining.

Our Supreme Court recently reaffirmed the policy of "broad judicial deference . . . to arbitrator's determinations regarding the arbitrability of the subject matter of a grievance" in *Scranton Federation of Teachers, Local 11147, AFT v. Scranton School District,* (No. 413 January Term, 1979, filed April 19, 1982).

This court has followed that doctrine, holding that we must "respect . . . the arbitrator's definition of his own jurisdiction, provided it is rationally derived from the collective bargaining agreement in light of its language, context or other indicia of the parties'

intention.'' *West Jefferson Hills School District v. Jefferson Federation of Teachers,* 61 Pa. Commonwealth Ct. 374, 433 A.2d 643 (1981), citing *Port Authority of Allegheny County.*

Hence, we can assign no error to the arbitrator's determination that the sabbatical leave policy was encompassed within the terms of the agreement. Pursuant to our reaching of that conclusion, *Leechburg* tells us that when, following the essence test, ''it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court.'' 492 Pa. at 521, 424 A.2d at 1312.

The origin of judicial deference to the arbitrator's interpretation, as well as to his determination of arbitrability, was outlined by the United States Supreme Court in *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358 (1960):

It is the arbitrator's construction which was bargained for, and so far as the arbitrator's decision concerns the construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

363 U.S. at 599, 80 S.Ct. at 1362.

Accordingly, we reverse the order of the common pleas court and reinstate the arbitrator's decision.

### ORDER

Now, July 13, 1982, the order of the Court of Common Pleas of Erie County, No. 912-A-1981, dated July 20, 1981, is reversed, and the decision of the arbitrator is reinstated.

President Judge CRUMLISH, JR. concurs in the result only.