Greater Johnstown Area Vocational-Technical School, Appellant *v.* Greater Johnstown Area Vocational-Technical Education Association, Appellee.

Argued May 5, 1982, before President Judge CRUM-
LISH, JR. and Judges WILLIAMS, JR. and MACPHAIL,
sitting as a panel of three.

*Marlin B. Stephens,* for appellant.

*William K. Eckel,* for appellee.

OPINION BY PRESIDENT JUDGE CRUMLISH, JR., Sep-
tember 29, 1982:

Greater Johnstown Area Vocational-Technical
School (School)[1] appeals from a Cambria County
Common Pleas Court order affirming an arbitration
award. We affirm.

---

[1] The Greater Johnstown Area Vocational-Technical School was
organized through an agreement among six school districts for the
purpose of maintaining and operating a full-time vocational school.

Due to a "projected" enrollment decrease,[2] the School curtailed and altered its curriculum, resulting in the suspensions of Earl Wadsworth, a tenured driver-education instructor with an alternate certification in physical education, and Kathleen Shedlock Patrick, a non-tenured English teacher (employees). The Greater Johnstown Area Vocational-Technical Education Association (Association) filed grievances on the employees' behalf, alleging that the School violated the "Just Cause Provision"[3] of the collective bargaining agreement (agreement) between the School and the Association. The grievance procedure set forth in the agreement establishes a four-step process, culminating in binding arbitration. Although the first three steps of the grievance mechanism were pursued, the School refused to proceed to arbitration. This Court, in *Pennsylvania Labor Relations Board v. Greater Johnstown Area Vocational-Technical School,* 48 Pa. Commonwealth Ct. 604, 410 A.2d 1290 (1980), affirmed the Pennsylvania Labor Relations Board order requiring the School to arbitrate the suspension issues.[4]

---

[2] This projection was apparently based on a decrease of enrollment in the six school districts from which the School drew its student body.

[3] Article VI of the collective bargaining agreement provides in pertinent part:

### JUST CAUSE PROVISION

No Professional Employee shall be reduced in rank or compensation or derived [sic] of any professional advantage without just cause. Any such action asserted by the Joint Operating Committee, or any agent or representative thereof, shall be subject to the grievance procedure herein set forth.

[4] In *Pennsylvania Labor Relations Board v. Greater Johnstown Area Vocational-Technical School,* the School was further ordered to arbitrate a grievance filed by the Association contesting the

The arbitrator concluded, *first,* that since the School had failed to realign its staff to retain Wadsworth in accordance with his alternate certification and seniority, he was improperly suspended; and, *second,* that School had curtailed or altered its English program without securing prior approval from the Pennsylvania Department of Public Instruction as required by law,[5] thus Patrick's suspension was likewise improper.

The arbitrator ordered the School to reinstate Wadsworth and to reimburse Patrick for all lost compensation and benefits resulting from her improper suspension. Common Pleas Court affirmed the award, and this appeal follows.

Initially we note that review of an arbitrator's decision is highly circumscribed and will not be overturned if it draws its essence from the collective bargaining agreement. *Leechburg Area School District v. Dale,* 492 Pa. 515, 517, 424 A.2d 1309, 1312 (1981). The "essence test" has been defined succinctly by our Supreme Court:

---

propriety of the School's decision to eliminate two academic positions. This issue, however, is not now before us.

[5] Section 1124(2) of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1124(2), provides that:

Any board of school directors may suspend the necessary number of professional employes, for any of the causes hereinafter enumerated:

. . . .

(2) Curtailment or alteration of the educational program on recommendation of the superintendent, concurred in by the board of school directors, *approved by the Department of Public Instruction,* as a result of substantial decline in class or course enrollments or to conform with standards of organization or educational activities required by law or recommended by the Department of Public Instruction. . . . (Emphasis added.)

The essence test requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute. *Where it is determined that the subject matter of the dispute is encompassed within the terms of the agreement, the validity of the arbitrator's interpretation is not a matter of concern to the court.* (Emphasis added.)

*Id.* at 520-21, 424 A.2d at 1312-13.

The collective bargaining agreement establishes a procedure to handle all grievances, a "grievance" being defined as *"any alleged violation . . . or any dispute* with respect to [the agreement's] meaning, interpretation or application." (Emphasis added.) The Association argues that the employees were suspended in violation of the agreement's "Just Cause Provision." It is clear then that the Association is alleging a *violation of the agreement* which, by the very terms of the agreement, must be processed through the four-step grievance mechanism.[6]

As to Wadsworth's grievance, the arbitrator concluded that the employee was deprived of professional advantage without just cause, *i.e.*, he was suspended in disregard of seniority and certification rights. The arbitrator thus found Wadsworth's suspension improper since he was certified to teach in another department where a junior employee had been retained.

As to Patrick's grievance, the arbitrator's conclusion that the employee's suspension was improper was based on the School's failure to comply with the Public School Code in curtailing and altering its

---

[6] We note that the arbitration of disputes or grievances between public employers and their employees arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. Section 903 of the Public Employees Relations Act, Act of July 23, 1970, P.L. 563, 43 P.S. §1101.903.

English program. In view of the Statutory Savings Clause,[7] which incorporates the Public School Code into the collective bargaining agreement, we believe that the parties intended to allow the arbitrator to decide whether the School has complied with the Public School Code in suspending its professional employees. *See Rylke v. Portage Area School District*, 473 Pa. 481, 375 A.2d 692 (1977).

We conclude that the issue of the suspensions' propriety is within the agreement's terms, thus our inquiry ends.[8] *See Leechburg Area School District* at 521, 424 A.2d at 1313. It must be remembered that it was the *arbitrator's* construction which was bargained for and, as long as the arbitrator's decision draws its essence from the collective bargaining agreement, we cannot overrule it merely because we might be inclined to interpret it differently.

Affirmed.

---

[7] Article V of the collective bargaining agreement provides:

### STATUTORY SAVINGS CLAUSE

Nothing contained herein shall be construed to deny or restrict to any Professional Employee or the Joint Operating Committee such rights as he or it may have under the Public School Code of 1949 as amended, or the Public Employees Relations Act, or other applicable laws and regulations.

[8] We reject the School's argument that Patrick was without standing to utilize the grievance procedure under the agreement since she was a *non-tenured* professional employee. The Just Cause Provision of the agreement is not limited to tenured professional employees. Moreover, an "aggrieved party" is defined in the agreement's grievance procedure provisions as a "Professional Employee . . . who [submits] a grievance or on whose behalf it is submitted. . . ." There is no distinction made between tenured and non-tenured professional employees. Hence, we cannot say that the arbitrator improperly assumed jurisdiction to determine the propriety of Patrick's suspension.

##### Order

The Cambria County Common Pleas Court order No. 1980-4728, dated June 23, 1981, is hereby affirmed.