**UNITED CEMENT, LIME & GYPSUM WORKERS INTERNATIONAL UNION, LOCAL NO. 206,**

v.

**The CELOTEX CORPORATION.**

Civ. A. No. 30582.

United States District Court
E. D. Pennsylvania.

May 18, 1962.

Meranze, Katz & Spear, Bernard N. Katz, Philadelphia, Pa., for plaintiff.

Morgan, Lewis & Bockius, Miles W. Kirkpatrick, Philadelphia, Pa., for defendant.

WOOD, District Judge.

This is a suit brought under the provisions of the Labor Management Relations Act (29 U.S.C.A. § 185) to compel the defendant to submit a dispute between it and the plaintiff to arbitration. Plaintiff contends that the dispute is a grievance which the collective bargaining agreement requires the defendant to arbitrate: defendant contends that the dispute is not a "grievance" as the term is used in the collective bar-

gaining agreement, and that the dispute is not subject to arbitration.

The collective bargaining agreement currently in force contains the following relevant provisions:

"ARTICLE III

"ADJUSTMENT OF GRIEVANCES AND ARBITRATION

"(A) *When an employee has a complaint,* he shall make an effort to arrive at a satisfactory settlement with his immediate management supervisor who shall hear the complaint and investigate it fully. Failing to arrive at a settlement, the matter complained of shall be reduced to the form of a written grievance by the employee or the Union and taken up with the department superintendent * * *

"(E) ARBITRATION: Should all efforts of the parties fail to produce a mutually satisfactory settlement of a grievance arising under this Agreement, such grievance may be referred to arbitration in the following manner and under the following rules:

* * * * *

"7. The power of any Board of Arbitration under this Agreement shall be restricted to the settlement of questions pertaining to the construction, interpretation, meaning and intent of the provisions of this Agreement and such Board shall not have power nor authority to add to, subtract from, alter or modify any of the terms of this Agreement."
(Emphasis supplied.)

This agreement also contains a no-strike provision, and a clause reserving to management "all responsibilities, rights and duties normally associated with management which are not expressly limited by this Agreement * * *" (Article XII, Clause D.)

The dispute between the Union and the Employer involves the Employer's right to subcontract work. The Union contends that several employees have been laid off because of the Employer's violation of the collective bargaining Agreement in subcontracting work. The dispute has been reduced to a written grievance and is stated by the Union as follows:

"The company has contracted out maintenance work from the maintenance department as well as steel fabricating and installation work. The company has also contracted out maintenance work formally [sic] done by quarry employees, all of which constitutes a violation of the entire collective bargaining agreement including, but not limited to Articles I, II, IV, V, VI, VII, XI, and XII."

The Employer has refused to arbitrate the dispute as it is now stated by the Union, contending that the grievance procedure was designed to resolve *specific* instances of alleged violations of the agreement, not to arbitrate broad questions of the Employer's management policies. The Employer attempted to have the Union enter into a submission agreement, defining more specifically the issue to be put before the arbitrator. The works manager of the Employer wrote the Union president, on October 12, 1961, stating:

"Specification of the union's contentions would remedy this defect of the grievance and would, in the view of the company, present proper subjects for arbitration within the terms of Article III."

The Employer was unsuccessful, however, in its attempts to narrow the issue to be arbitrated. The Union refused to sign the submission agreement, and has insisted that the Employer arbitrate the issue as it is now stated in the written grievance.

Our function in this case is to determine whether, under the terms of the collective bargaining agreement, the dispute between the parties is one which is subject to arbitration. In refusing to arbitrate the grievance as stated, the Employer argues that the collective bargaining agreement reserves to the company all normal management functions; that a general policy with regard to sub-

contracting work is such a function of management; and that the grievance procedure outlined in the collective bargaining agreement does not contemplate the arbitration of such broad, general questions. Furthermore, there is nothing specifically stated in the collective bargaining agreement as to the Employer's right to subcontract work; therefore, it can be argued that the present dispute does not concern the interpretation of that agreement.

Although we might have found the Employer's position meritorious at one time in the past, it is now clearly the law that any subject matter which is not *specifically excluded* from the grievance-arbitration procedure in a collective bargaining agreement with a no-strike clause and a broad arbitration clause, is included in the grievance-arbitration procedure.[1] In the case of United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Supreme Court of the United States said:

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad." At pp. 584, 585, 80 S.Ct. at p. 1354.

In that case, the collective bargaining agreement contained a clause reserving to management all functions normally associated with management; there was no specific provision in the agreement with regard to the company's right to subcontract work; and the union's grievance was stated as follows:

" 'We are hereby protesting the Company's actions, of arbitrarily and unreasonably contracting out work to other concerns, that could and previously has been performed by Company employees.

" 'This practice becomes unreasonable, unjust and discriminatory in lieu (sic) of the fact that at present there are a number of employees that have been laid off * * *.

" 'Confronted with these facts we charge that the Company is in violation of the contract * * *.' " pp. 575, 576, 80 S.Ct. at p. 1349.

The Supreme Court reversed the District Court and the Court of Appeals, both of which had held that the Employer did not have to arbitrate the broad question of subcontracting work.

In light of these cases, we are compelled to grant the Union's motion for judgment on the pleadings and order the Employer to proceed to arbitration. We can see no distinction between the case at bar and the Warrior and Gulf case, discussed above.

### ORDER.

And now, to wit, this 18th day of May, 1962, It Is Hereby Ordered that the plaintiff's motion for judgment on the pleadings is granted. The defendant's motion for summary judgment in its favor is denied. The defendant is ordered to proceed to arbitration as prayed for in the complaint.

---

1. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); Harris Structural Steel, Inc. v. United Steelworkers of America, 3rd Circuit, 298 F.2d 363; and Yale & Towne Manufacturing Company v. Local Lodge No. 1717, International Association of Machinists, et al., 3rd Circuit, 299 F.2d 882.