Commonwealth of Pennsylvania, Petitioner *v.*
Joint Bargaining Committee of Pennsylvania
Social Services Union, Local 668, and the Pennsylvania Employment Security Employees' Association, Local 675, affiliates of Service Employees International Union, AFL-CIO, by Andrew Stern, Trustee Ad Litem, Respondent.

614

Argued June 6, 1984 before Judges ROGERS, CRAIG and BARBIERI, sitting as a panel of three.

*Frank A. Fisher, Jr.*, with him, *Lynne M. Mountz,* Deputy Chief Counsel, *John D. Raup,* Chief Counsel, and *Jay C. Waldman*, General Counsel, for petitioner.

*Bruce M. Ludwig, Stephen A. Sheller & Associates,* for respondent.

OPINION BY JUDGE CRAIG, August 29, 1984:

The Commonwealth of Pennsylvania appeals a labor arbitrator's award, which sustained a grievance in favor of a group of employees whom Pennsylvania Social Services Union represents for collective bargaining purposes.

The issues for our resolution are (1) whether the arbitrator erred in determining that the grievance presented an arbitrable issue and (2) whether he grounded his award on an interpretation of the collective bargaining agreement.

Before securing employment with the Commonwealth, each of the grievants had participated in Project Hope, a career training program sponsored by the Allegheny County Welfare Rights Organization.

Project Hope, itself a private undertaking, was part of an affirmative action program to train welfare recipients toward a goal of civil service employment in the income maintenance worker classification series.

Following their successful completion of the nine-month Project Hope program, the Department of Public Welfare hired the participants, the majority of whom were black and female; they worked for three months as state work program trainees (SWPT's), at the highest possible SWPT salary, and then for six months as public service trainees (PST's), again receiving the maximum pay specified for PST's. Those positions, which are not within the state civil service system, were part of a unit which the American Federation of State, County and Municipal Employees (AFSCME) represented in collective bargaining.

At the conclusion of their PST service, DPW promoted the trainees, without the otherwise mandatory examination, into income maintenance worker trainee (IMWT) positions, a classification which is part of the civil service and which the union (i.e., PSSU) represents for collective bargaining.

Nine months after the promotion of the last Project Hope graduates into IMWT positions, the union filed a class action grievance on behalf of all employees who had been Project participants. The grievance alleged that the Commonwealth had discriminated against the employees while they held SWPT and PST positions, and that the discrimination and its effect were of such a continuing nature that they persisted in their impact on the employees in their current positions.

Specifically, the union alleged that during their nine-month tenure as SWPT's and PST's, the employees were performing the same work, but not receiving as much pay, as those in IMWT positions who had secured their jobs through the usual civil service

channels. The union alleged that the disparity in treatment constituted impermissible discrimination under its collective bargaining agreement and sought as a remedy an award of backpay and IMW seniority for the nine months of interim classification.

Having failed to resolve the grievance, the parties submitted it to arbitration. After a hearing, the arbitrator issued an interim award which found that the complaint alleged discrimination of a continuing nature, and, therefore, the grievance was not subject to the otherwise applicable fifteen-day filing period of the agreement. It concluded that the grievance was timely and presented issues arbitrable under the agreement. The arbitrator's final award found for the grievants on the merits and, as a remedy, awarded backpay and seniority for the nine months the grievants had worked as SWPT's and PST's.

## A. Arbitrability

Although not labelled as such, the major thrust of the Commonwealth's position is that the complaint did not present a grievance which was properly arbitrable under the collective bargaining agreement.

Specifically, the Commonwealth contends (1) that the complaint was not a "grievance" as defined in the agreement and (2) that the grievants were not covered by the union's agreement at the time of the alleged discriminatory actions.[1]

We note initially that Pennsylvania labor policy strongly favors the arbitration of public employee grievances. *Shippensburg Area Education Associ-*

---

[1] The Commonwealth also contends that the arbitrator failed to find a continuing violation of the agreement. The assertion, based on a strained interpretation of the arbitrator's opinion, clearly ignores the plain language of both the interim award and the final award where the arbitrator stated unequivocally that he had found a continuing violation of the agreement.

*ation v. Shippensburg Area School District,* 42 Pa. Commonwealth Ct. 128, 400 A.2d 1331 (1979) and that the "broad judicial deference given arbitrators' decisions applies with equal force to determinations regarding the arbitrability of the subject matter of a grievance." *Scranton Federation of Teachers, Local 1147, AFT v. Scranton School District,* 498 Pa. 58, 65, 444 A.2d 1144, 1147 (1982). In reviewing arbitrability decisions, courts must adhere to the rule that "except when the contract clearly and expressly excludes the dispute from arbitration, the process set up in collective bargaining negotiations must prevail." *Pittsburgh Joint Collective Bargaining Committee v. City of Pittsburgh,* 481 Pa. 66, 70-71, 391 A.2d 1318, 1320 (1978).

The Commonwealth contends that the union's allegations of discrimination with respect to promotion, pay and seniority rights do not fall within the agreement's relatively broad explanation of a grievance as "any . . . dispute which may arise concerning the application, meaning or interpretation of this Agreement. . . ." However, the agreement specifically addresses the subjects of discrimination (Article 33), affirmative action (Article 39), promotion (Article 29), pay (Appendix G) and seniority (Article 29), and nowhere does it expressly exclude arbitration of any questions which the grievants raise.

The Commonwealth's remaining contentions with respect to arbitrability are grounded on its position that there was no continuing violation, and therefore, that the grievants were not subject to the protections of the union's agreement at the time of the alleged discrimination. Because the grievants received the same salary as all other IMWT's once they reached that position, the Commonwealth asserts that any discrimination must have occurred when they were employed as SWPT's and PST's. Those positions are

part of an AFSCME bargaining unit; therefore, the Commonwealth contends, they may not pursue a remedy under their current PSSU agreement for discrimination which occurred when they were represented by a different union.

Based on the evidence and his examination of the agreement, the arbitrator concluded, in his interim award, that the ''grievance involves issues that are of a continuing violation'' and that the grievance was "arbitrable on [the] merits.'' In his final award, the arbitrator concluded that the Commonwealth had discriminated against the grievants and that the discrimination and its effects continued to have an impact on them in their present IMW positions.

Because the arbitrator based his conclusions on the evidence and his interpretation of the parties' collective bargaining agreement, and mindful of our limited role, we conclude that he did not err in his determination that the complaint presented an arbitrable dispute.

## B. Merits

Our review of the arbitrator's decision on the merits is limited to a determination of whether the award draws its essence from the collective bargaining agreement. The familiar ''essence test'' requires a reviewing court to defer to the arbitrator's decision if his '' 'interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. . . .' Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1128 (3d Cir. 1969).'' *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977).

Application of the essence test involves an initial determination of whether the terms of the agreement

encompass the subject matter of the dispute; if so, "the validity of the arbitrator's interpretation is not a matter of concern to the court." *Leechburg Area School District v. Dale,* 492 Pa. 515, 520-21, 424 A.2d 1309, 1313 (1981).

The Commonwealth contends that the award does not draw its essence from the agreement because the arbitrator found no violation of the agreement's discrimination clause. In the opinion supporting his final award, the arbitrator concluded that, although the Commonwealth's treatment of the grievants probably did not violate the literal wording of the agreement's language, it did violate an implicit contractual term requiring that the parties "administer the agreement in a fair, reasonable, and equitable manner, and so as not to result in discriminatory practices unrelated to legitimate criteria."

Clearly the parties' agreement addresses the subject matter of the present dispute: impermissible discrimination. Because an arbitrator must give effect to the spirit as well as the letter of the agreement, *Association of Pennsylvania State College and University Faculties v. Commonwealth,* 496 Pa. 239, 436 A.2d 987 (1981), we are satisfied that the arbitrator based his finding of discrimination on a reasonable interpretation of the parties' agreement.

The Commonwealth also contends that the arbitrator exceeded his contractual authority by awarding backpay and seniority for a time period when the grievants were not PSSU members and by finding a violation when the agreement's discrimination clause does not cover the present situation.

The agreement provides, in Article 32, Section 2, that "the collective bargaining agreement shall constitute the basis upon which the decision shall be rendered" and that the "arbitrator shall neither add to,

620

subtract from, nor modify the provisions of this Agreement.''

Because the arbitrator's interpretation of his authority is also subject to review by the essence test, the Commonwealth's contention adds nothing of substance to our analysis of the arbitrator's award. We conclude that the arbitrator did base the definition of his authority on a rational interpretation of the agreement.

Accordingly, we affirm.

ORDER

Now, August 29, 1984, the award of the arbitrator, dated February 2, 1982, is affirmed.