Commonwealth of Pennsylvania, Petitioner *v.* State Schools and Hospitals Federation of Teachers, Local 1830, Pennsylvania Federation of Teachers, AFT, AFL-CIO, by John D'Eletto, Trustee ad Litem, Respondent.

Argued January 31, 1985, before Judges CRAIG and COLINS, and Senior Judge BLATT, sitting as a panel of three.

*Steven O. Newhouse,* Assistant Counsel, with him, *John D. Raup,* Chief Counsel, for petitioner.

*Sandra R. Kushner,* with her, *Louis B. Kushner, Rothman, Gordon, Foreman and Groudine, P.A.,* for respondent.

OPINION BY JUDGE CRAIG, March 1, 1985:

The Commonwealth of Pennsylvania appeals from a labor arbitrator's award sustaining grievances which the State School and Hospitals Federation of Teachers, Local 1830, Pennsylvania Federation of Teachers, AFT, AFL-CIO had filed on behalf of several former employees whom the Department of Public Welfare (DPW) had furloughed.

We must determine whether the award drew its essence from the parties' collective bargaining agreement with respect to the arbitrator's conclusions that (1) the award incorporated by reference the terms of an extrinsic document and (2) DPW's action in contracting out the bargaining unit's work violated the agreement. We must also determine whether the arbitrator exceeded his authority or erroneously refused to receive evidence which the Commonwealth offered.

In 1979, DPW transferred the educational responsibility of mentally handicapped persons to the Department of Education; in conjunction with the transfer, DPW furloughed a number of employees who had been providing that educational service. The union grieved the furloughing of the employees, and failing to resolve the issue, the parties submitted the case to arbitration. The arbitrator sustained the union's grievances on February 19, 1981, and on appeal, this court remanded the case for the resolution of two specific questions.[1] After an additional hearing, the arbitrator issued a supplemental award, answering the court's questions and again sustaining the grievances.

Initially, the Commonwealth contends that the arbitrator's award, which concluded that the parties' collective bargaining agreement had incorporated by reference a document known as the "Guidelines", did not draw its essence from the agreement. The arbitrator concluded that because DPW did not follow the procedure of the Guidelines when it furloughed

---

[1] The court remanded for evidence on the questions of:

(1) Whether the bargaining unit includes employees who function as instructors of mentally handicapped individuals other than school-age children, and

(2) In which division of the bargaining unit each grievant can accurately be placed.

the grievants, that action violated the bargaining agreement.

The Guidelines were part of a 1973 consent agreement settling a federal case which the Pennsylvania Association of Retarded Children had instituted against the Commonwealth. Formally titled ''General Guidelines for Transferring State School Education Programs to Intermediate Units'', the document addressed the transfer of DPW's education programs into intermediate units under the Department of Education, and provided that DPW would offer employees whom it transferred to the intermediate units the choice of which of two ''options'' would govern that move.[2] The terms of the Guidelines extended only to former employees of the Office of Mental Retardation, and therefore do not explicitly include the present grievants, who were employees in the Office of Mental Health.

Relying on the language of the agreement's annual leave section, the arbitrator concluded that the parties had intended to incorporate the provisions of the Guidelines, including option rights, into the collective bargaining agreement. That section provided:

*Section 8.* The parties hereto agree that those employees of the Department of Public Wel-

---

[2] The Guidelines provided:

OPTION I

4.1.1 Resigning and accepting a 10-month Intermediate Unit contract at a salary commensurate with his qualifications and experience but no less than the gross DPW salary he would be making in the period beginning September 1, 1973, and ending June 30, 1974; or—

OPTION II

4.1.2 Making a "paper" transfer to the program jurisdiction of the Intermediate Unit while remaining in his current DPW Civil Service classification, pay range, benefit package, retirement plan and 12-month employment status.

fare who elect option 2 of the "Procedures and Policies for Transferring State School Education Programs to Intermediate Units" shall not use any annual leave during the regular schedule (180 days) of the Intermediate Unit.

Our review of labor arbitration awards is pursuant to the familiar "essence test". We must uphold the arbitrator's decision if " 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. . . .' Ludwig Honold Manufacturing Company v. Fletcher, 405 F.2d 1123, 1128 (3rd Cir. 1969)." *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977).

An arbitrator's interpretation of the language of an agreement is the clearest instance of the award drawing its essence from the collective bargaining agreement. We cannot say that the arbitrator's conclusion, that the annual leave provision incorporated the entirety of the Guidelines,[3] was not based upon the contract, particularly when the Commonwealth has provided no authority that the agreement's single reference was insufficient to accomplish the incorporation.[4]

---

[3] The arbitrator's conclusion is reinforced by the general rule of contract construction that an ambiguity in the terms of a written contract must be resolved against the party drafting the contract, here the Commonwealth. *Camp Joy, Inc. v. Department of Public Welfare*, 70 Pa. Commonwealth Ct. 142, 452 A.2d 891 (1982).

[4] We also find unpersuasive the Commonwealth's argument that incorporation of the Guidelines violates the agreement's furlough provisions. The arbitrator could reasonably view the Guidelines as offering a supplement or alternative to the agreement's internal furlough provisions only for those bargaining unit employees who transferred to Intermediate Units.

The Commonwealth next contends that the arbitrator's determination, that the transfer of bargaining unit work and the subsequent furloughs of the employees violated the agreement, did not draw its essence from the collective bargaining agreement. The arbitrator apparently accepted the union's position that the agreement's recognition clause (Article II), together with the salary and wages (Article XXVI) and seniority (Article XXVII) sections, provided job protection, and therefore prevented contracting out the unit's work and thus barred the furloughing of the employees.

Application of the essence test requires, as our Supreme Court has declared, an initial determination of "whether the terms of the agreement encompass the subject matter of the dispute." *Leechburg Area School District v. Dale,* 492 Pa. 515, 520-21, 424 A.2d 1309, 1312 (1981). If the issue is within the agreement's terms, and the arbitrator bases his decision on that agreement, "the validity of the arbitrator's interpretation is not a matter of concern to the court." *Leechburg,* 492 Pa. at 521, 424 A.2d at 1313.

Although the agreement here contained no specific prohibition on contracting out the bargaining unit's work, our Supreme Court has concluded, in an analogous situation under federal law, that a dispute involving contracting out presented an arbitrable issue within the scope of the agreement. *United Steel Workers of America, AFL-CIO v. Westinghouse Electric Corporation,* 413 Pa. 358, 196 A.2d 857 (1964); see also *United Cement, Lime & Gypsum Workers International Union, Local 206 v. Celotex Corporation,* 205 F. Supp. 957 (1962).

In *United Steelworkers,* as here, the bargaining agreement did not contain a provision specifically pro-

hibiting the employer from contracting out the unit's work; nevertheless, the Supreme Court held that the union's grievance presented an issue within the purview of the agreement and was therefore arbitrable. Guided by the Supreme Court's reasoning, we cannot conclude that the contracting out issue was beyond the terms of this collective bargaining agreement.

The Commonwealth next contends that the arbitrator exceeded his authority under the agreement by adding to, substracting from, or modifying the provisions of the agreement, in violation of Article VI of the agreement. That argument is but a reiteration of the Commonwealth's attack on the arbitrator's interpretation of the agreement as incorporating the Guidelines and prohibiting the contracting out of unit work.

As this court has observed with respect to that argument, "[b]ecause the arbitrator's interpretation of his authority is also subject to review by the essence test, the Commonwealth's contention adds nothing of substance to our analysis of the arbitrator's award." *Commonwealth of Pennsylvania v. Joint Bargaining Committee of Pennsylvania Social Services Union, Local 668,* 84 Pa. Commonwealth Ct. 613, 620, 480 A.2d 373, 377 (1984). Furthermore, allowing claims of the improper interpretation of an agreement to come within the category of "exceeded powers" would render binding arbitration a useless procedure. *Leechburg Area School District v. Leechburg Education Association,* 475 Pa. 413, 380 A.2d 1203 (1977).

The Commonwealth contends finally that the arbitrator erred in refusing to receive at the remand hearing evidence concerning whether the parties to the 1973 federal consent agreement intended the Guidelines to apply to the present grievants. The arbitrator excluded that evidence, concluding that it was

beyond the scope of this court's remand order. We agree.

In remanding the case, this court specifically directed that the arbitrator receive evidence necessary to determine whether the bargaining unit included employees who taught mentally handicapped people other than school-age children and in which of two divisions (teachers of school-age children and teachers of other individuals) each of the grievants belonged. Although those issues are not controlling here, the court's order did not require the arbitrator to receive evidence outside those limited inquiries; thus, the arbitrator did not err in refusing to accept evidence outside that narrow scope.

Accordingly, we affirm.

ORDER

Now, March 1, 1985, the awards of the arbitrator, dated February 19, 1981 and June 6, 1984, are affirmed.

Judge WILLIAMS, JR., did not participate in the decision in this case.