Commonwealth of Pennsylvania, Petitioner *v.* Joint Bargaining Committee of Pennsylvania Social Services Union, et al., Respondents.

Argued January 31, 1985, before Judges MACPHAIL, BARRY and PALLADINO, sitting as a panel of three.

*Steven O. Newhouse,* Assistant Counsel, with him, *John D. Raup,* Chief Counsel, and *Frank A. Fisher,* Assistant Counsel, for petitioner.

*Bruce M. Ludwig, Stephen A. Sheller & Associates,* for respondents.

OPINION BY JUDGE PALLADINO, March 20, 1985:

This appeal by the Commonwealth of Pennsylvania (Commonwealth) challenges an arbitration award rendered in favor of the Joint Bargaining Committee of Pennsylvania Social Services Union (Union) on the grounds that: 1) the award does not draw its essence from the Collective Bargaining Agreement (Agreement); 2) the arbitrator exceeded the scope of his authority; and 3) the arbitrator refused to allow the Commonwealth to present post-hearing evidence regarding bargaining history of the agreement. We affirm the arbitration award.

The Commonwealth employs Therapeutic Recreation Workers (employees), who are represented by the Union, at Norristown State Hospital. In May of 1981, the Commonwealth changed the employees' working hours and the employees submitted a grievance protesting the new schedule[1] on the ground that it violated various provisions of the Agreement.[2] In June of 1981

---

[1] Prior to May of 1981 the employees had worked 7-1/2 hours per day, five days per week. Their shift was either from 8 a.m. to 4:30 p.m. or 12:00 p.m. to 8:30 p.m. The new schedule required work nights and weekends.

[2] The applicable provisions of the Agreement are as follows:
*Section 1.* The work week shall consist of five consecutive work days in a pre-established work schedule except for employes in seven-day operations.
*Section 2.* The work day shall consist of any 24 hours in a pre-established work schedule beginning with the scheduled reporting time for the employe's shift.

the Commonwealth revised the schedules and the employees again filed a grievance.[3] Neither grievance was resolved and both were consolidated for arbitration. The arbitrator found that: 1) prior to May of

*Section 3.* The work shift shall consist of 7-1/2 or 8 work hours within a pre-established work day.

*Section 4.* The regular hours of work for any shift shall be consecutive except that they may be interrupted by a lunch period.

*Section 5.* a. Work schedules showing the employes' shifts, work days, and hours shall be posted on applicable departmental bulletin boards at the work site. Except for emergencies, changes will be posted two weeks in advance.

b. Where changes are to be made by the Employer for other than emergency reasons, or where schedules are to be adopted for new programs, the Employer agrees to meet and discuss with the Union prior to the implementation of such changes or schedules.

c. An employe whose regular work schedule is Monday through Friday throughout the year shall not have his/her work schedule changed to other than a Monday through Friday schedule except for a legitimate operational reason which is not arbitrary or capricious.

*Section 6.* a. Employes engaged in seven-day operations are defined as those employes working in any activity for which there is regularly scheduled employment for seven days a week. The work week for seven-day operations shall consist of any five (5) consecutive days within a seven calendar-day period except where employes have historically been regularly scheduled for seven days a week. In such cases of regularly scheduled employment for seven days per week, the work week shall consist of any five days within a consecutive seven calendar day period.

b. For employes of Youth Development Centers in the Department of Public Welfare, the work schedule shall consist of any ten (10) days within a consecutive fourteen calendar day period.

c. Employes engaged in seven day operations will not be scheduled for more than two (2) consecutive weekends except in cases where the Employer and the Union agree.

[3] The revised schedules also included working nights and weekends.

1981 the employees had been employed for a five-day, Monday through Friday, work week; 2) in May and June of 1981 the Commonwealth changed the employees' schedule; 3) the change was made so that the Commonwealth could avoid paying overtime; and 4) the avoidance of paying overtime was not "a legitimate operational reason which is not arbitrary and capricious." The arbitrator concluded that the Commonwealth had violated the Agreement and ordered that the pre-May, 1981 schedule be reinstated and that the employees be paid the amount of overtime which they would have received had they been working under the Monday-Friday schedules.

The Commonwealth first argues that the award does not draw its essence from the Agreement because the arbitrator looked to a previous arbitration award (Herring Award)[4] to help him determine whether the words "a legitimate operational reason" included avoiding paying overtime. This Court's scope of review of an arbitrator's award is limited to the "essence test":

> [W]here a task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the Judiciary if "the interpretation can in any rational way be derived from the agreement

---

[4] The Herring Award was rendered in 1980 as a result of arbitration entered into between the Commonwealth and the American Federation of State, County and Municipal Employees (AFSCME) and interpreted the same contract provision at issue in the case at bar as not to include avoidance of overtime as a "legitimate operational reason."

viewed in light of its language, its context, and any other indicia of the parties' intention . . . ." (Citations omitted.) *Leechburg Area School District v. Dale,* 492 Pa. 515, 520, 424 A.2d 1309, 1312 (1981).

Once it is determined that the subject matter of the dispute is encompassed by the terms of the collective bargaining agreement, this Court may not concern itself with the validity of the arbitrator's interpretation. *Leechburg,* 492 Pa. 515, 424 A.2d 1309. The dispute presented by the case before us is whether the Commonwealth violated the terms of the Agreement when it changed the employees' schedules. Article 6, Section 5 of the Agreement specifically addressed when and how an employee's schedule may be changed. It is therefore clear that the subject matter of the dispute is encompassed by the terms of the Agreement. The arbitrator was called upon to interpret the words "legitimate operational reason." In making his interpretation he looked to the Herring Award which had interpreted identical language.[5] This does not remove the award from the essence of the Agreement. In making an interpretation of the language of the Agree-

---

[5] The arbitrator noted that the contractual language of Article 6, Section 5 was the result of negotiations between the Commonwealth and AFSCME which occurred in 1978 and was first incorporated into a collective bargaining agreement between the Commonwealth and the Pennsylvania Social Services Union (PSSU) in their 1978-1981 agreement. During the Herring arbitration proceedings, the witnesses agreed that their intent in drafting the language was to insure that schedules would not be changed to avoid overtime. The arbitrator further noted that the Commonwealth was a party to both the AFSCME and PSSU collective bargaining agreements and that the Herring Award was handed down in 1980, prior to the negotiations for the 1981-1983 contract negotiations at issue before him. He then stated that it is reasonable to conclude that the Herring Award interpretation was known to and accepted by the Commonwealth.

ment the arbitrator is looking for the intent of the parties and may consider matters collateral to the Agreement in order to ascertain that intent. *Joint Bargaining Committee of the Pennsylvania Social Services Union, Local 668 v. Commonwealth of Pennsylvania,* 81 Pa. Commonwealth Ct. 126, 472 A.2d 1194 (1984).[6] We therefore hold that the award does draw its essence from the Agreement.

The Commonwealth's second argument is that the arbitrator exceeded the scope of his authority, in violation of Article 32, Section 2 of the Agreement[7], by looking to the Herring Award in order to interpret the Agreement. "Because the arbitrator's interpretation of his authority is also subject to review by the essence test, the Commonwealth's contention adds nothing of substance to our analysis of the arbitrator's award." *Commonwealth of Pennsylvania v. Joint Bargaining Committee of Pennsylvania Social Services Union, Local 668,* 84 Pa. Commonwealth Ct. 613, 620, 480 A.2d 373, 377 (1984). It was not improper for the arbitrator to look to collateral matters to determine the intent of the parties; he did not, therefore, exceed his authority by doing so.

The Commonwealth's final argument, that the arbitrator erred in refusing to allow post-hearing evidence, is not properly preserved for appeal to this Court. There is nothing contained in the record to indicate

---

[6] We note that the Supreme Court of Pennsylvania has looked to an arbitrator's award to assist the Court in determining the effect of a broad integration clause in a collective bargaining agreement. *See County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 37-38, 381 A.2d 849, 854 (1977).

[7] Article 32, Section 2 of the Agreement provides, in pertinent part:

The arbitrator shall neither add to, subtract from, nor modify the provisions of the agreement.

that the Commonwealth objected to the Union's submission of the Herring Award, excepted to the arbitrator's ruling that the hearings not be reopened, or filed a post-award application to the arbitrator seeking correction or classification of the award. This Court is therefore unable to rule upon the issue within our appellate jurisdiction pursuant to which the Commonwealth filed its petition for review.

Accordingly, the arbitration award is affirmed.

ORDER

AND Now, March 20, 1985, the arbitration award in the above-captioned case, dated February 28, 1984, is affirmed.

Judge WILLIAMS, JR., did not participate in the decision in this case.