Wyoming Valley West Education Association, Appellant *v.* Wyoming Valley West School District, Appellee.

Argued June 7, 1985, before Judges DOYLE and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Peter J. O'Brien, O'Brien and Miller,* for appellant.

*Michael J. Hudacek,* for appellee.

OPINION BY SENIOR JUDGE BARBIERI, October 22, 1985:

Wyoming Valley West Education Association (Association) appeals here the order of the Luzerne

County Court of Common Pleas vacating the arbitrator's award which sustained grievances filed by the Association on behalf of four professional staff members furloughed by the Wyoming Valley West School District (District) because of a decline in student enrollment.

We must determine whether the arbitrator's conclusion, based on a memorandum stating the District's furloughing policy printed on the back cover of the collective bargaining agreement, that the grievants' furlough was improper drew its essence from the collective bargaining agreement.

On June 16, 1983, seven professional employees of the District were notified of their furlough. The reason given for their furlough was a substantial decline in student enrollment. Three professional employees were later reinstated; the Association filed grievances on behalf of the four employees who remained furloughed. The grievances proceeded to arbitration; the arbitrator set out the following provisions undisputedly part of the agreement and pertinent to the grievance filed:

Article 1.  General
Section 6.  Statutory Savings
Nothing contained herein shall be construed to deny or restrict to any employe such rights as may exist under the public school code of 1949 as amended, or other applicable laws and regulations.
Article 11.  Working Conditions
Section 8.  Just Cause
No member of the bargaining unit shall be discharged, disciplined, suspended, or laid off without just cause.

Were the arbitrator to have considered the grievances in light of the above two contract provisions

only, he might have been constrained to deny the requested relief. Section 1124 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §11-1124, provides that any board of school directors may suspend the necessary number of professional employees in the event of a substantial decline in enrollment in the school district. This court has held that

> there is not and cannot be a precise definition of what is a 'substantial' decrease sufficient to justify a given number of job eliminations. This is an area in which school boards must exercise discretion and board action will not be disturbed absent a showing that such discretion was abused, or that the action was arbitrary, based on a misconception of law or ignorance of facts.

*Phillippi v. School District of Springfield Township,* 28 Pa. Commonwealth Ct. 185, 190, 367 A.2d 1133, 1137 (1977).

The arbitrator, however, also considered the following, printed on the back cover of the collective bargaining agreement booklet:

Wyoming Valley West School
District Policy
Re: Furloughing of
Professional Staff Members

Wyoming Valley West School District shall avoid furloughing professional members except for substantial decline in student enrollment (in excess of 300 students in any one school year) which seriously reduces the number of teaching sections to the point where an excess of professional staff members exists.

The Board of Directors and the Administration will make every reasonable effort to reassign

professional staff members to professional
duties for which they are properly certified in
a further effort to avoid furloughing pro-
fessional staff members

The parties disagreed regarding whether the above
"furloughing policy" was one of the terms of the
collective bargaining agreement. The arbitrator ac-
knowledged that without the above language there was
no evidence that the District abused its discretion
when it determined that a substantial decline in en-
rollment had occurred and that the grievants must
remain furloughed. In deciding to include the lan-
guage as part of the bargaining agreement the arbi-
trator reasoned as follows:

The fact is, however, that the furloughing
language does appear in the 1981-84 Agree-
ment between the District and the Association,
and did appear . . . in the 1977-81 Agreement.
The parties do not agree as to whether or not
this language was originally negotiated into the
Agreement. Notwithstanding how it originally
became a part of the Agreement, however, it did
become a part of the Agreement when it was
added to the text.

The arbitrator, therefore, determined that the fur-
loughs were in violation of the agreement and directed
the District to reinstate the grievants.

The District appealed to the common pleas court.
The common pleas court reviewed the record of the
testimony taken at the arbitration and determined
that the policy statement had never been negotiated,
there had been no meeting of the minds with regard
to the statement, and, thus, the statement had not
properly been included within the terms of the col-
lective bargaining agreement. The court, therefore,
vacated the arbitrator's award. The Association ap-

pealed the common pleas court's decision to this court.

On appeal, the Association argues that the common pleas court misunderstood its function and improperly substituted its judgment for that of the arbitrator, that application of the essence test to the arbitrator's decision by the reviewing court requires that his decision not be disturbed.

The Association is correct in pointing out that reviewing courts have a limited scope of review. We must determine whether the arbitrator's award was drawn from the essence of the agreement. The "essence" test has been articulated by our Supreme Court:

> To state the matter more prescisely, where the task of an arbitrator, . . . has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention'. . . .

*Leechburg Area School District v. Dale,* 492 Pa. 515, 520, 424 A.2d 1309, 1312 (1981) (quoting *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 593-94, 375 A.2d 1267, 1275 (1977) (quoting *Ludwig Honold Manufacturing Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969))).

Thus, our task is to review, using the essence test, the arbitrator's determination of the intent of the parties as evidenced by their collective bargaining agreement and the surrounding circumstances. A col-

lective bargaining agreement may encompass more than what has been reduced to writing. *Association of Pennsylvania State College and University Faculties (APSCUF) v. Commonwealth,* 496 Pa. 239, 436 A.2d 987 (1981). Therefore, in interpreting the parties' collective bargaining agreement, the arbitrator may look for guidance to various sources. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574 (1960). In *United Steelworkers,* the Supreme Court expressly stated:

> The labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it.

363 U.S. at 581-82.

In *County of Allegheny v. Allegheny County Prison Employees Independent Union,* 476 Pa. 27, 381 A.2d 849 (1977) our Supreme Court recognized four situations in which evidence of past practice could be used in arbitration: (1) to clarify ambiguous language; (2) to implement contract language which sets forth only a general rule; (3) to modify or amend apparently unambiguous language which has arguably been waived by the parties; and (4) to create or prove a separate, enforceable condition of employment which cannot be derived from the express language of the agreement. The court prohibited consideration of past practice to prove a separately enforceable condition of employment, however, when the contract includes an integration clause stating that the agreement as written represents the complete agreement between the parties.[1]

---

[1] We note, however, that the parties' collective bargaining agreement does *not* contain an integration clause.

Sources other than past practice which would create a separately enforceable condition of employment have been considered by arbitrators and their decisions have been affirmed by the appellate courts of this Commonwealth. In *AFSCUF, supra,* our Supreme Court affirmed an arbitrator's award support for which was found not in the express terms of the writing, but in the actions and promises of the college administration. Judge CRAIG, in *Commonwealth v. State Schools and Hospitals Federation of Teachers,* 88 Pa. Commonwealth Ct. 57, 488 A.2d 404 (1985), writing for this Court, held that the arbitrator properly determined that a reference in a provision of the collective bargaining agreement to an extrinsic set of guidelines outlining furlough procedure could be interpreted to mean that the guidelines should be incorporated in their entirety within the agreement.

Each conclusion reached by the courts above was arrived at upon application of the essence test to the arbitrator's interpretation. Thus, it is our task in this case to determine whether the arbitrator's conclusion that the four professional employees were improperly furloughed was rationally derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.

Since the language of the instant agreement, unlike the situation in *Commonwealth v. State Schools and Hospitals Federation of Teachers,* provides no clues regarding the parties' intent, we must examine other indicia of the parties' intent such as the negotiation process as testified to by the parties at the arbitration hearing.

The parties testified that the furloughing language at issue in this case first appeared on the back cover of the 1977-81 collective bargaining agreement; it was placed on the back cover at the request of the Associa-

tion for informational purposes. During negotiations for the 1981-84 agreement, according to the District, the District consistently refused to negotiate its policy with regard to furloughing. The Association which had ratified the final draft of the new agreement, refused to sign the agreement on the basis that the agreement did not contain any furloughing language. Both parties filed unfair labor practice charges with the Pennsylvania Labor Relations Board. The charges never reached the formal hearing stage; negotiations for settlement of the joint charges resulted in the District's agreement to again print the furloughing language minus any reference to the time frame within which the policy would be effective, on the back cover of the collective bargaining agreement.

We believe the arbitrator could properly conclude on the basis of the above evidence of the parties' intent that the District's furloughing policy must be considered in construing the parties' collective bargaining agreement. As we stated in *Leechburg,* "[t]he fact that this arbitrator in analyzing this dispute may have failed to properly perceive the question presented or erroneously resolved it, does not provide justification for judicial interference." 492 Pa. at 521, 424 A.2d at 1313. Accordingly, the common pleas court order will be vacated and the arbitrator's award reinstated.

### ORDER

Now, October 22, 1985, the order of the Luzerne County Court of Common Pleas, dated October 4, 1984, is hereby vacated and the award of Arbitrator David M. Schneck, issued January 23, 1984, is reinstated.