633 A.2d 1301

**In the MATTER OF ARBITRATION BETWEEN MOUNT CARMEL BOROUGH POLICE DEPARTMENT AND BOROUGH OF MOUNT CARMEL,**

**Appeal BOROUGH OF MOUNT CARMEL, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted June 16, 1993.

Decided Nov. 8, 1993.

536

Robert B. Sacavage, for appellant.

James J. Rosini, for appellee.

Before CRAIG, President Judge, and COLINS, PALLADINO, McGINLEY, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

PELLEGRINI, Judge.

The Borough of Mount Carmel (Borough) appeals from an order of the Court of Common Pleas of Northumberland County affirming the arbitrator's award directing that the Borough reimburse Blaine R. Handerhan, a Borough police officer, $14,788.55 for legal fees incurred in a criminal defense proceeding.[1]

Handerhan is a Corporal in the Mount Carmel Borough Police Department. On November 28, 1989, he was arrested

1. This matter was argued before a panel of this court, but in accordance with our Internal Operating Procedure § 256, was submitted on briefs to the court en banc.

and charged with two counts of statutory rape and the corruption of a minor. Handerhan requested the Borough to provide legal counsel to represent him in his defense of the criminal charges. After the Borough denied his request, Handerhan obtained private counsel. Following a jury trial, Handerhan was found not guilty on all counts.

Handerhan filed a grievance under the terms of the collective bargaining agreement (Agreement) between the parties requesting the Borough to reimburse him for his legal fees. The Borough denied Handerhan's grievance and the dispute was submitted to an arbitrator.

A clause in the Agreement which the arbitrator interpreted required that the Borough provide a liability insurance policy in the amount of $500,000 "for any legal action arising by virtue of an officer's performance of his duties." [2] The arbitrator determined that the Borough was obligated to pay for legal representation because there was no question that Handerhan's trial resulted in an acquittal,[3] and thus, was permitted under Section 1(b) of the Act of June 27, 1968, P.L. 271, as amended, 53 P.S. § 639(b) (Act of 1968), which provides:

> (b) Any borough, town or township may, through collective bargaining or otherwise, enter into a written agreement by or on behalf of its police officers to pay specified and reasonable legal expenses and attorney's fees incurred in the defense of any criminal action initiated against any such

**2.** The contract provision interpreted by the arbitrator stated:
ARTICLE XVII—LIABILITY INSURANCE
17.1 The Borough shall provide all members full and part time of the Police Department a Liability Insurance Policy in the amount of Five Hundred Thousand ($500,000.00) Dollars for any legal action arising by virtue of an officers [sic] performance of his duties.

**3.** The following stipulations were made by the parties:
1. [The police officer] was tried and acquitted of the criminal charges filed against him.
2. *Criminal charges against [the police officer] were incurred in the performance of his duties.*
3. The Borough liability with [its insurance company] was a civil liability policy.
4. The legal fees [the police officer] requested reimbursement for amounted to $14,788.55.
Arbitrator's Opinion at 5.

officer as a result of acts performed by such officer in the scope and course of employment as a police officer. Such agreement and/or payment shall be permitted only in criminal actions wherein the prosecution of charges against such officer has been withdrawn, dismissed or terminated by the entry of a nolle prosequi or by an adjudication of not guilty.

The trial court affirmed the award on the basis of its limited review in the nature of a narrow certiorari, stating that although it disagreed with the arbitrator's decision, the arbitrator did not act "in excess of his authority." This appeal followed.

The issue which was submitted to the arbitrator was whether the Agreement signed between the police and the Borough required the Borough to provide legal expenses and attorney fees for the defense of a police officer accused of a crime. The arbitrator specifically framed the issue as: "Is the grievant entitled to reimbursement for his legal fees under Article XVII.1—Liability Insurance, of the collective bargaining agreement?" Arbitrator's Opinion at 3.[4]

On appeal to this court, the Borough argues that the arbitrator exceeded his authority by failing to rule whether the parties had ever negotiated and agreed upon a provision specifically establishing reasonable attorney fees as contemplated under Section 1(b) of the Act of 1968.

■ Before reviewing the arbitrator's decision, we must determine the proper standard of review to be applied. The trial court reviewed the arbitrator's decision under the "narrow certiorari" standard. Although we had previously held that the standard of review on appeal of Act 111[5] grievance arbitration is in the nature of "narrow certiorari",[6] we have

---

4. The arbitration proceedings were not transcribed so we do not know how the charges of statutory rape and corruption of the morals of a minor are work-related. However, the parties stipulated that the charges were incurred in the performance of Handerhan's duties.

5. Act of June 24, 1968, P.L. 237, *as amended*, 43 P.S. §§ 217.1–217.10. Act 111 applies only to police and fire personnel.

6. *See City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Wilson)*, 129 Pa.Commonwealth Ct. 392, 565 A.2d 1232 (1989).

recently decided that because the source of the authorization for police and fire grievance arbitration is the Uniform Arbitration Act (UAA), the standard of review is the one provided for in the UAA, 42 Pa.C.S. § 7302(d), the "essence" test. *Pennsylvania State Police v. Pennsylvania State Troopers' Association (Trooper James Betancourt)*, 159 Pa.Commonwealth Ct. 489, 633 A.2d 1278 (1993). In that case, we recognized that Act 111 does not provide for grievance arbitration, but grievance arbitration is authorized for police and fire personnel by the UAA:

> In 1980, the General Assembly enacted the UAA which established uniform arbitration procedures regarding "collective bargaining agreement[s] to arbitrate controversies between employers and employees; and those arising out of government contracts." In Township of Moon,[7] our Supreme Court ... held that Act 111 did not foreclose an arbitration panel's power to establish procedures for the *grievance arbitration.* It found that such a procedure could be legally imposed, not under Act 111, but under the provisions of the UAA. It did so because if "the parties could have voluntarily agreed to a grievance procedure in accordance with the Uniform Arbitration Act," then it certainly followed that an arbitration panel also had the authority. *Id.* at 509, 498 A.2d at 1312.

*Pennsylvania State Police,* 159 Pa.Cmwlth. at 503–504, 633 A.2d at 1285–86 (footnote added).

The standard set forth in the UAA for grievance arbitration provides:

> (1) Paragraph (2) shall be applicable where:
>> (i) The Commonwealth government submits a controversy to arbitration;
>> (ii) A political subdivision submits a controversy with an employee or a representative of employees to arbitration;
>> (iii) Any person has been required by law to submit or to agree to submit a controversy to arbitration pursuant to this subchapter.

7. *Township of Moon,* 508 Pa. 495, 498 A.2d 1305 (1985).

(2) Where this paragraph is applicable, a court, in reviewing an arbitration award pursuant to this subchapter, shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury, the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S. § 7302(d).

The "essence test", as it has been formulated in our case law,[8] requires a determination as to whether the terms of the agreement encompass the subject matter of the dispute, and if so, the validity of the arbitrator's interpretation is not a matter of concern to the court. *Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981); *Joint Bargaining Committee of the Pennsylvania Social Services Union v. Commonwealth,* 81 Pa.Commonwealth Ct. 126, 472 A.2d 1194 (1984). Therefore, on judicial review, an arbitration award should be upheld if the award "draws its essence from the collective bargaining agreement." *Leechburg,* 492 Pa. at 520, 424 A.2d at 1312. In *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977), the Supreme Court stated the test precisely:

> where a task of an arbitrator, . . . has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if 'the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention . . .'.

---

**8.** Even after the enactment of the UAA with its "n.o.v." standard, the case law has continued to apply the essence test, viewing the two standards as essentially the same. *City of Philadelphia v. Fraternal Order of Police Lodge No. 5 (Wilson),* 129 Pa.Commonwealth Ct. 392, 396, 565 A.2d 1232, 1235 (1989).

*Id.* at 594, 375 A.2d at 1275 (citation omitted and footnote added).

■ In this case, the arbitrator was presented with the issue of whether Handerhan was entitled to reimbursement for his legal fees under the liability insurance section of the Agreement, Article 17.1.[9] The arbitrator considered that in negotiations, the Union presented Article 17.1 to the Borough and no discussion ensued, even though the Borough knew that its insurance policy covered only civil actions. No discussion was given to Section 1(b) of the Act of 1968, leading the arbitrator to decide that the Union believed that Article 17.1 covered criminal actions. The arbitrator then determined that because the language of Article 17.1 provides insurance to pay legal fees "for any legal action arising by virtue of an officer's performance of his duties," Handerhan was entitled to reimbursement because the parties stipulated that the criminal charges were incurred in the performance of his duties and he was acquitted of the charges.

Reviewing that decision under the essence test or the UAA standard, viewed in light of the language of Article 17.1 stating that "any legal action" is covered, and the determination of the parties' intention, the arbitrator's decision could be rationally derived from the Agreement and we must respect that decision.

Based on the above discussion, we affirm the order of the Court of Common Pleas of Northumberland County.

## ORDER

AND NOW, this 8th day of November, 1993, the order of the Court of Common Pleas of Northumberland County, dated September 5, 1991, No. CV–91–1240, is affirmed.

9. The arbitrator's award contains the only recounting of the arbitration hearing. Apparently, the parties stipulated that no formal record would be produced. While grievance arbitration procedures are less formal than most administrative proceedings, the parties should create and preserve a record that would enable courts to conduct proper judicial review of the issues raised. Absent some countervailing record evidence, as long as we can determine that the arbitrator has jurisdiction over the subject matter of the grievance, we will assume that the evidence presented is as recounted in the referee's award.