**DEPARTMENT OF CORRECTIONS,**
Petitioner

v.

**PENNSYLVANIA STATE CORREC-
TIONS OFFICERS ASSOCIA-
TION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 11, 2006.

Decided Jan. 4, 2007.

Reargument Denied Feb. 23, 2007.

Publication Ordered March 30, 2007.

Keith A. Herbster, Asst. Counsel, Harrisburg, for petitioner.

Stephen J. Holroyd, Philadelphia, for respondent.

BEFORE: SMITH–RIBNER, Judge, and PELLEGRINI, Judge (P.), and FRIEDMAN, Judge.

Opinion by Judge PELLEGRINI.

The Commonwealth of Pennsylvania, Department of Corrections (Employer) petitions for review of that portion of the Arbitrator's award issuing a remedy to make whole all current and former bargaining unit members who lost Corrections Officer overtime opportunities from January 1, 2004, through June 30, 2005, because that timeframe extended beyond the equalization period that was at issue in the grievances submitted for resolution.

The Pennsylvania State Corrections Officers Association (Union) was the collective bargaining representative of the H–1 bargaining unit which included employees of Employer in the job classifications of Corrections Officer I and Corrections Officer II. The Union and Employer were parties to a collective bargaining agreement (CBA)[1] that set forth in Article 18,

---

1. The CBA was effective July 1, 2001, through June 30, 2004, but remained in full force and effect pending the outcome of interest arbitration proceedings.

Section 5a the procedure for equalizing overtime work during each one-half calendar year among its employees in the same job classification by first offering voluntary overtime to the most senior employee who had the least overtime credit.

Corrections officers were required to attend 40 hours of training every year, and Employer used Corrections Officers I and II as instructors. When the annual training sessions began, if training was not held during an employee's regular shift, Employer paid overtime to corrections officers for attending and/or instructing those mandatory sessions. Overtime was not equalized for corrections officers attending or instructing those training sessions. In July 1988, Employer and its then collective bargaining representative entered a Side Letter Agreement that stated "[i]f overtime has been authorized for employes to attend training, the hours spent in the training session(s) will not be recorded for voluntary overtime equalization purposes nor recorded as a mandatory overtime assignment." (Reproduced Record at 162a.)

At some point in 2002, after the Union had become Employer's collective bargaining representative, Employer rearranged corrections officers' regular shifts to coincide with mandatory training sessions to avoid paying overtime. Subsequently, Employer again began to only pay Corrections Officer I and II instructors overtime, but excluded it from their equalization computation. The Union then filed a grievance dated July 7, 2004, contending that Corrections Officer II instructors received overtime not afforded other Corrections Officers II in the undisputed equalization period between January 1, 2004, and June 30, 2004. Employer denied the grievance, citing the Side Letter Agreement that provided overtime spent attending mandatory training sessions did not need to be equalized. Because the Union and Employer were unable to resolve the matter through the CBA's grievance procedure, the grievance proceeded to arbitration in accordance with Section 903 of the Public Employe Relations Act (Act 195), 43 P.S. § 1101.903,[2] and Article 35 [3] of the CBA.

Before the Arbitrator,[4] the parties agreed that a grievance challenging Employer's failure to equalize Corrections Officer I instructors' overtime would also be

---

2. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.903, provides:

Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tripartite board of arbitrators as the parties may agree. . . .

3. Article 35 of the CBA provided, in pertinent part, "[t]he arbitrator shall neither add to, subtract from, nor modify the provisions of this Agreement. The arbitrator shall be confined to the precise issue submitted for arbitration and shall have no authority to determine any other issues not so submitted." (Reproduced Record at 85a.)

4. There is no formal record of the proceedings before the Arbitrator. In *Appeal of Borough of Mount Carmel*, 159 Pa.Cmwlth. 535, 633 A.2d 1301, 1304 n. 9 (1993), we stated:

The arbitrator's award contains the only recounting of the arbitration hearing. Apparently, the parties stipulated that no formal record would be produced. While grievance arbitration procedures are less formal than most administrative proceedings, the parties should create and preserve a record that would enable courts to conduct proper judicial review of the issues raised. Absent some countervailing record evidence, as long as we can determine that the arbitrator has jurisdiction over the subject matter of the grievance, we will assume that the evidence presented is as recounted in the referee's award.

resolved. The Union and Employer then stipulated to the following issue:

> Did [Employer] violate Article 18 of the parties' collective bargaining agreement by failing to include overtime earned by corrections officer instructors in the equalization units to which they belong? *If so, what shall be the remedy?*

(Reproduced Record at 2a.) (Emphasis added.) The Union introduced a document that was handwritten by a grievant stating that between January 1, 2004, and June 30, 2004, three Corrections Officer II instructors had 77 hours of overtime and 10 Corrections Officer I instructors had 509 hours of overtime which had not been equalized. The Union's business agent, James Chernavage (Chernavage), testified that "no instructor overtime equalization grievances have been filed since the equalization period ending June 30, 2005." (Reproduced Record at 10a.)

Finding that Employer violated Article 18 of the CBA because, among other things, the Side Letter Agreement did not authorize Employer to exclude Corrections Officer I and II instructors overtime from equalization because overtime earned *attending* mandatory training sessions was different than overtime earned voluntarily *instructing* those sessions, the Arbitrator sustained the grievances. As a remedy, he ordered Employer to make whole all current and former Corrections Officers I and II who lost overtime opportunities between January 1, 2004, and June 30, 2005. Employer then filed this petition for review to vacate and set aside that portion of the award providing a remedy for a period of time beyond the equalization period that was at issue in the grievances submitted for resolution.

◼ Not challenging that portion of the award that found Corrections Officer I and II instructors' overtime was not excluded from equalization, Employer contends that the Arbitrator exceeded his jurisdiction by extending the timeframe subject to equalization past the specific time period that the parties submitted to arbitration.[5] It contends that all it submitted to the Arbitrator for resolution was Employer's exclusion from equalization overtime worked by Corrections Officer I and II instructors from January 1, 2004, through June 30, 2004, while the Arbitrator extended that period through June 30, 2005, with his "make-whole" award.

◼ The jurisdiction of an arbitrator is restricted to resolving the dispute that the parties have submitted for arbitration. *Bensalem Township School District v. Bensalem Township Education Association*, 99 Pa.Cmwlth. 141, 512 A.2d 802 (1986). In *Sley System Garages v. Transport Workers Union of America*, 406 Pa. 370, 374, 178 A.2d 560, 561–562 (1962), our Supreme Court stated:

> The power and authority of arbitrators are wholly dependent upon the terms of the agreement of submission, and they cannot exercise authority as to matters not included therein, or validly determine the dispute if they violate or act inconsistently with the terms of the submission.... The scope of matters submitted to arbitration is determined by

5. Employer also contends that the award was in violation of Rule 7 of the Rules for Voluntary Labor Arbitration of the American Arbitration Association (AAA Rules), which states "[a]fter the arbitrator is appointed, no new or different claim may be submitted except with the consent of the arbitrator and all parties." In so arguing, it relies on the *City of Philadel-phia v. Fraternal Order of Police, Lodge No. 5*, 564 Pa. 290, 768 A.2d 291 (2001), where the collective bargaining agreement stated that arbitrations were to be conducted pursuant to the AAA Rules. However, the CBA in this case made no reference to any reliance on the AAA Rules in conducting arbitration and, thus, are not applicable.

the intention of the parties as ascertained in accordance with the rules governing contracts generally. (Citations omitted.)

Moreover, the Arbitrator's jurisdiction in this case was also contractually limited. Article 35 of the CBA provided "[t]he arbitrator shall be confined to the precise issue submitted for arbitration and shall have no authority to determine any other issues not so submitted."

 While an arbitrator is given latitude and flexibility in fashioning a proper remedy, *Danville Education Association v. Danville Area School District*, 78 Pa. Cmwlth. 238, 467 A.2d 644 (1983), that latitude and flexibility does not stretch to allow an arbitrator to resolve matters not before him. The Union contends that because the stipulated issue submitted to arbitration was "whether Employer violated Article 18 of the CBA by failing to equalize Corrections Officer I and II Instructors' overtime and if so, what shall be the remedy," that gave the Arbitrator the jurisdiction to make the remedy for all periods that Employer failed to equalize, not just the period submitted to arbitration. However, that stipulation only involved the legal issue and did not give the Arbitrator jurisdiction to extend the undisputed grieved time period of January 1, 2004, through June 30, 2004. By extending the period that Employer would have to "make whole" through June 30, 2005, the Arbitrator went beyond the scope of his jurisdiction in granting a remedy through June 30, 2005.

Accordingly, that portion of the Arbitrator's award resolving the two grievances submitted for arbitration and granting a remedy from January 1, 2004, through June 30, 2004, is affirmed, and that portion of the Arbitrator's award resolving matters not before him and granting a remedy after June 30, 2004, is reversed.

### ORDER

AND NOW, this *4th* day of *January,* 2007, that portion of the Arbitrator's award, dated July 27, 2006, at No. 14 390 01114 05, resolving the two grievances submitted for arbitration and granting a remedy from January 1, 2004, through June 30, 2004, is affirmed, and that portion of the Arbitrator's award resolving matters not before him and granting a remedy after June 30, 2004, is reversed.